**Corey E. LEWIS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee.**

No. 90A05–0007–CR–301.

Court of Appeals of Indiana.

Sept. 24, 2001.

William E. Daily, Danville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Corey E. Lewis, appeals his convictions for Possession of Cocaine, a Class C felony,[1] and Possession of Marijuana, a Class A misdemeanor.[2] Upon appeal, Lewis presents four arguments which we restate as:

(1) Whether the trial court erred in denying Lewis's motion to dismiss based upon his claim that civil forfeiture of his vehicle constituted punishment such that the subsequent criminal proceedings violated the Double Jeopardy Clause of the Indiana and Federal Constitutions;

(2) Whether the trial court erred in admitting evidence obtained from the pat-down search conducted prior to placing Lewis into the police vehicle;

(3) Whether the trial court erred in admitting evidence obtained from the inventory of Lewis's automobile; and

(4) Whether the trial court erred in imposing consecutive sentences without articulating aggravating factors.

We affirm the convictions but modify the sentence to impose concurrent sentences.

On August 5, 1995, Indiana State Trooper Kurt P. Jack observed a vehicle traveling 69 miles per hour in a 55 mile per hour zone. Trooper Jack initiated a traffic stop and noted that the vehicle bore a Colorado license plate that had been expired for over one year. When stopped, Lewis initially produced an expired Colorado registration certificate and an expired Colorado driver's license. He then produced a valid temporary driver's license from Michigan

---

1. Ind.Code § 35–48–4–6 (Burns Code Ed. Repl.1998 and Supp.2000). The offense is a Class C felony if "the amount of the drug involved (pure or adulterated) weighs three (3) grams or more...." I.C. § 35–48–4–6(b)(1).

2. Ind.Code § 35–48–4–11 (Burns Code Ed. Repl.1998).

and claimed that he had been living in Detroit, Michigan for four months, although he could not remember his current address. Lewis also produced traffic citations from Colorado, Kansas, Illinois, and Marion County, Indiana. Trooper Jack informed Lewis that the vehicle would have to be impounded because the license plate had been expired for more than one year.[3] Lewis requested that he be transported to the next available telephone, which was located at the Markle exit of Interstate I–69. Trooper Jack agreed and advised that he would need to pat-down Lewis prior to placing him inside the police vehicle. Trooper Jack asked Lewis if he had any weapons in his possession, and Lewis advised that he did not. Trooper Jack observed a large bulge in the pocket of Lewis's shorts that Lewis claimed was money. As Trooper Jack conducted the pat-down search, he felt an item in Lewis's pocket that was "rectangular shaped ... almost the same size as a razor blade." Record at 548. Trooper Jack removed the item from Lewis's pocket and discovered "three mini ziplock bags of ... green leafy plant like material" and a "large wad of 100 dollar bills, ... some 20's and 10's and some 5's and some 1's that totaled up to be I believe $3,388.00...." Record at 548–49. Lewis was placed under arrest, and a wrecker was summoned to tow his vehicle.

Prior to towing, Trooper Jack and Officer Han Schmidt inventoried the contents of Lewis's vehicle pursuant to established police department policy. The inventory revealed, among other items of personal property, a vial containing white residue, a plastic bag containing a white powdery substance, a plastic bottle containing a white granular substance, another mini ziplock bag containing a green leafy substance, and a rolled cigarette also containing a green leafy substance. Testing revealed that the vial contained trace amounts of cocaine residue, that both the white powdery substance and the white granular substance were cocaine, and that the green leafy substance was marijuana. Lewis was charged with Possession of Marijuana, Possession of Paraphernalia, and Possession of Cocaine.

Lewis moved to dismiss the charges. In support of his motion, Lewis argued that subjecting him to both civil forfeiture of his vehicle and the subsequent criminal proceedings violated his right against double jeopardy under the Federal and Indiana Constitutions. According to Lewis, the forfeiture of his vehicle constituted punishment and, because the criminal proceedings also constituted punishment, he was being punished twice for the same crime. The trial court denied the motion, noting that no order forfeiting the vehicle had been issued in the forfeiture proceedings. The trial court reasoned that without an order forfeiting the vehicle, it was unable to weigh the value of the property forfeited against the costs incurred in the prosecution of Lewis to determine whether the civil forfeiture proceedings constituted punishment.

Lewis also moved to suppress the evidence obtained during the initial pat-down search and vehicle inventory, alleging that the searches violated the Federal and Indiana Constitutions. Lewis argued that the pat-down search was pretextual, that it was not a search incident to lawful arrest, and that it was not based upon a reasonable articulable suspicion that Lewis possessed a weapon. In addition, Lewis contended that the inventory was conducted without probable cause and without the

---

**3.** Ind.Code § 9–18–2–43(a) authorizes a law enforcement officer to impound a vehicle "that does not have the proper certificate of registration or license plate...." (Burns Code Ed. Repl.1997).

authority of a search warrant. After a hearing, the trial court denied the motion to suppress.

Lewis waived his right to a jury trial, and a bench trial commenced on March 16, 2000. The trial court convicted Lewis of Possession of Marijuana and Possession of Cocaine,[4] and sentenced him to one year incarceration for the marijuana conviction and four years incarceration for the cocaine conviction, said sentences to be served consecutively. The trial court then suspended the sentences and placed Lewis on probation for three years.

## I

### Double Jeopardy Violation

■ Lewis contends that the trial court erred by failing to grant his motion to dismiss the criminal charges filed by the State. According to Lewis, prosecution for the criminal charges violated his right against double jeopardy under the Indiana and Federal Constitutions because the State had previously "seized and sought or obtained forfeiture of [Lewis's] personal property in a separate cause of action in Cause No. 90C01–9508–CP–112." Record at 159. Indiana Code § 35–34–1–8(f) provides that a criminal defendant has the burden of proving, by a preponderance of the evidence, all facts necessary to support a motion to dismiss. See Wright v. State, 700 N.E.2d 1153, 1155 (Ind.Ct.App.1998). Because Lewis is appealing a negative judgment, we will reverse the trial court's ruling "only if the evidence is without con-

flict and leads inescapably to the conclusion that [Lewis] was entitled to dismissal." Id.; Richardson v. State, 456 N.E.2d 1063, 1066 (Ind.Ct.App.1983).

■ At the hearing upon the motion to dismiss, Lewis argued that the civil forfeiture of his vehicle constituted punishment such that the criminal proceedings were a second punishment in violation of double jeopardy. However, upon appeal, Lewis also argues that "once the forfeiture proceeding was initiated, [Lewis] faced the risk of punishment," exposing him to the "personal strain, public embarrassment, and expense of a trial more than once for the same offense." Appellant's Brief at 13. He argues that because jeopardy attached in the forfeiture proceeding, once that proceeding was initiated, the subsequent criminal proceeding violated double jeopardy. However, because Lewis failed to present his jeopardy attachment argument to the trial court, we consider only his argument that the civil forfeiture of his vehicle constituted punishment, thereby barring the subsequent criminal prosecution.

■ Lewis claimed that the State had initiated forfeiture proceedings against his 1988 Toyota automobile and the $3,388.00 in cash confiscated during the pat-down and inventory searches. Although Lewis provided the trial court with a cause number for the forfeiture proceeding, he failed to provide evidence that the forfeiture had actually taken place, i.e., that a judgment had been entered in favor of the State.[5]

---

4. The State dismissed the Possession of Paraphernalia charge.

5. Ind.Code § 34–24–1–1(a)(1)(A)(vi) (Burns Code Ed. Repl.1998) provides that a vehicle may be seized if used by a person to "facilitate the transportation" of a controlled substance for the purpose of committing the offense of possession of cocaine.

Ind.Code § 34–24–1–2(b) (Burns Code Ed. Repl.1998) allows the law enforcement agency making the seizure to hold the property pending final disposition of the matter.

Ind.Code § 34–24–1–3 (Burns Code Ed. Repl.1998) states that the court shall, upon motion, "enter judgment in favor of the [S]tate and the unit (if appropriate)," if the owner of the seized property, or anyone with

In fact, Lewis concedes that no actual judgment was obtained in the forfeiture proceeding. Rather, Lewis asserts that because his vehicle was missing from the impoundment lot and unavailable for return to him,[6] the result is the same as it would be had an adverse judgment been rendered against him in the forfeiture proceeding. Regardless, Lewis failed to prove that his vehicle was taken as a result of a judgment in the civil forfeiture proceeding. Unless and until the trial court entered a judgment ordering the 1988 Toyota forfeited, Lewis had not been punished as a result of the forfeiture proceeding. Because Lewis failed to prove that the vehicle was forfeited, so that the forfeiture could arguably constitute a first punishment, his argument that the criminal proceedings constituted a second punishment must fail. *See State v. Klein,* 702 N.E.2d 771, 774–75 (Ind.Ct.App.1998), *trans. denied.*[7] To the extent Lewis seeks relief for his missing vehicle on grounds that the State allegedly failed to follow the required statutory forfeiture procedures, his remedy is not in this court and any such

claim for relief does not affect the outcome of his criminal convictions.

## II

### *Motion to Suppress*

Lewis next contends that the trial court erred in admitting into evidence the items recovered from his person during the pat-down search, as well as the items confiscated during the vehicle inventory, arguing that both the pat-down search and the inventory violated his rights under the Federal and Indiana Constitutions.

We first note that while Lewis did file a pre-trial motion to suppress the evidence obtained from the pat-down and inventory searches, he failed to contemporaneously object to the admission of this evidence at trial. Failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error upon appeal. *Jackson v. State,* 735 N.E.2d 1146, 1152 (Ind.2000). In addition, a defendant waives his suppression claim if he " 'makes only a general objection, or

---

right, title or interest of record in the property, fails to respond to the forfeiture complaint. Ind.Code § 34–24–1–4(a) (Burns Code Ed. Repl.1998) states that at the hearing on the forfeiture complaint, the prosecuting attorney must show, by a preponderance of the evidence, that the property seized was subject to seizure. If the prosecuting attorney meets this burden of proof, judgment is entered in favor of the State and the unit (if appropriate), and the property may, if allowed by the court's order, be used by the agency for a defined period or be delivered to the county sheriff for public sale. I.C. § 34–24–1–4(c) and (d). However, if the prosecuting attorney fails to meet the burden of proof, the court shall order the property released to the owner. I.C. § 34–24–1–4(b).

6. At the hearing on the motion to dismiss, neither the State nor Lewis was certain of the reason Lewis's automobile was missing from the impoundment lot.

7. In *Klein,* a panel of this court noted that in order to determine whether criminal proceedings following the civil forfeiture of a vehicle constitute multiple punishments for the same offense, it must first determine whether "the forfeiture constituted a punishment for purposes of double jeopardy." 702 N.E.2d at 773. Our Supreme Court has already determined that civil forfeiture proceedings, while exhibiting characteristics of both civil and criminal actions, are properly classified as civil in nature. *See Katner v. State,* 655 N.E.2d 345, 347 (Ind.1995). Thus, the question for the court is whether the forfeiture sanction is "so punitive in fact" that it may not be legitimately viewed as civil in nature, i.e., whether the sanction was "so punitive that the forfeiture transformed from civil to criminal." *Klein,* 702 N.E.2d at 773–74. Thus, without an actual forfeiture there can be no punishment. *Id.* at 775. The impoundment and holding of the vehicle in and of themselves do not constitute "punishment" in a double jeopardy context.

objects only on other grounds.'" *Benberry v. State,* 742 N.E.2d 532, 535 (Ind.Ct. App.2001) (quoting *G.J. v. State,* 716 N.E.2d 475, 478 (Ind.Ct.App.1999)). Our review of the record indicates that the trial court admitted the evidence either without objection from Lewis or over an objection made upon grounds other than search and seizure. In fact, at trial Lewis made no challenge to the constitutionality of the searches, based upon either the Fourth Amendment or the Indiana Constitution, until after the evidence had been admitted and after he had completed his initial cross-examination of Trooper Jack. Lewis's failure results in waiver of appellate review.

 Waiver notwithstanding, we address the merits of Lewis's claims. The trial court has broad discretion in ruling on the admissibility of evidence, and we will not reverse its decision absent a showing of an abuse of that discretion. *Allen v. State,* 743 N.E.2d 1222, 1227 (Ind.Ct.App. 2001), *reh'g denied, trans. denied.* We will neither reweigh the evidence nor judge witness credibility. *Id.* Upon review, we consider the totality of the circumstances together with all uncontroverted evidence and any conflicting evidence favorable to the ruling. *Camp v. State,* 751 N.E.2d 299 (Ind.Ct.App.2001). If the basis for the trial court's ruling is unclear, we will uphold it if a "reasonable view of the evidence" supports the ruling. *Id.* at 301.

### A. Pat-down Prior to Transport

Lewis contends that the trial court erred in admitting into evidence the items obtained from his person during the pat-down search Trooper Jack conducted prior to transporting Lewis to the Markle exit. While Lewis does not challenge the validity of the initial traffic stop, he does argue that, because Trooper Jack lacked any reasonable articulable suspicion justifying the pat-down search, that the search violated the Federal and State Constitutions.

 Under the Fourth Amendment, a law enforcement officer is permitted to conduct a reasonable search for weapons, for the officer's protection, where the officer has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The *Terry* court balanced the "neutralization of danger to the policeman in the investigative circumstance and the sanctity of the individual," concluding that there is:

> "narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless or whether he has probable cause to arrest the individual for a crime." *Id.* at 26–27, 88 S.Ct. 1868.

However, an officer "may not frisk for weapons 'on less than reasonable belief or suspicion directed at the person to be frisked.'" *Wilson v. State,* 745 N.E.2d 789, 792 (Ind.2001) (quoting *Ybarra v. Illinois,* 444 U.S. 85, 94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)). Thus, "[a]n officer's authority to conduct a pat-down search is dependent upon the nature and extent of his particularized concern for his safety and that of others." *Wilson,* 745 N.E.2d at 792; *accord Mitchell v. State,* 745 N.E.2d 775, 781 (Ind.2001).

Our Supreme Court recently addressed the issue of pat-down searches conducted prior to placing a driver inside a police vehicle during a routine traffic stop. In *Wilson,* the court acknowledged that "when an officer places a person into a patrol car that will be occupied by the officer or other persons, there is a significantly heightened risk of substantial dan-

ger to those in the car in the event the detainee is armed." 745 N.E.2d at 792. The *Wilson* court determined that this increased risk was sufficient to satisfy the reasonable belief or suspicion requirement and found that it was "generally reasonable for a prudent officer to pat-down persons placed in his patrol car, even absent a belief of dangerousness particularized to the specific detainee." *Id.* Nevertheless, in reaching this conclusion, our Supreme Court declined to hold that the Fourth Amendment permitted officers to routinely "place traffic stop detainees in a police vehicle if this necessarily subjects the detainee to a preliminary pat-down frisk," and further noted that an officer fails to use the "least intrusive means to investigate a traffic stop if, without particularized justification making it reasonably necessary, he places a person into his patrol vehicle and thereby subjects the person to a pat-down search." *Id.* at 793.

■ The totality of the circumstances in this case indicates that it was reasonably necessary for Trooper Jack to place Lewis inside the police vehicle. Lewis's vehicle was incapable of lawful operation because of the expired license plate. When Lewis expressed his desire to be transported, Trooper Jack advised that he would transport Lewis as requested, but only after he conducted a pat-down search for weapons and contraband. Even if Trooper Jack lacked a belief that Lewis posed a risk of danger, the increased risk of placing Lewis, a potentially armed individual, into the police vehicle justified Trooper Jack's pat-down search of Lewis prior to placing him inside the police vehicle. As it was reasonably necessary for Trooper Jack to conduct the pat-down search prior to transporting Lewis, the search did not violate the Federal Constitution.

Lewis also contends that the pat-down search violated Article 1, Section 11 of the Indiana Constitution. Although the language of Article 1, Section 11 is nearly identical to the Fourth Amendment, our Supreme Court has "made an explicit point to interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence." *Mitchell,* 745 N.E.2d at 786. The purpose of Article 1, Section 11 is to " 'protect from unreasonable police activity, those areas of life that Hoosiers regard as private'." *Id.* (quoting *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995)). Accordingly, we look to the circumstances of each case to determine whether the behavior of the police was reasonable. *Id.* The burden is upon the State to show " 'that, in the totality of the circumstances, the intrusion was reasonable.' " *Id.* (quoting *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind. 1999)).

Here, Trooper Jack testified that Lewis was initially stopped for speeding and subsequently determined to be driving an automobile with an expired license plate. Because the automobile could not be legally driven, Trooper Jack was authorized, by statute, to impound the automobile. Rather than leave Lewis along the side of the interstate, Trooper Jack agreed to transport Lewis to the Markle exit where he could access a telephone. However, Trooper Jack advised Lewis that he would conduct a pat-down search of his person prior to placing him inside the police vehicle. Given the circumstances surrounding the initial stop and subsequent pat-down, we conclude that it was reasonable for Trooper Jack to conduct a pat-down search of Lewis prior to placing him inside the police vehicle. The increased risk of danger to Trooper Jack of transporting an individual that might be armed, provided sufficient justification for the pat-down search. Accordingly, the trial court correctly, under the Indiana Constitution, de-

nied the motion to suppress evidence obtained during the pat-down search.

### B. Vehicle Inventory

Lewis also argues that the trial court erred in admitting into evidence the items of contraband obtained during the inventory of his vehicle. Lewis contends that the evidence was inadmissible because the State failed to introduce as evidence the actual written police department policy concerning vehicle inventories. Although Trooper Jack testified that he followed the standard procedure for vehicle inventories, Lewis contends that without proof of the "actual State Police policy and procedures for the impounding and inventorying of vehicles," the trial court could not judge the reasonableness of the inventory search nor know that the "search comported with the standard procedures."[8] Appellant's Brief at 20. We disagree.

▉▉▉▉▉ In general, the Fourth Amendment prohibits warrantless searches. *Vehorn v. State,* 717 N.E.2d 869, 875 (Ind. 1999); *Berry v. State,* 704 N.E.2d 462, 465 (Ind.1998). If the search is conducted without a warrant, the burden is upon the State to prove that, at the time of the search, an exception to the warrant requirement existed. *Vehorn,* 717 N.E.2d at 875. An inventory search of a vehicle is one such recognized exception. *Id.; South*

*Dakota v. Opperman,* 428 U.S. 364, 372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). "In determining the propriety of an inventory search, 'the threshold question ... is whether the impoundment itself was proper.'" *Vehorn v. State,* 717 N.E.2d at 875 (quoting *Fair v. State,* 627 N.E.2d 427, 431 (Ind.1993)). Next we look to the reasonableness of the search itself. "The search must be conducted pursuant to standard police procedures, as evidenced by the circumstances surrounding the search." *Stephens v. State,* 735 N.E.2d 278, 282 (Ind. Ct.App.2000), *trans. denied; Vehorn,* 717 N.E.2d at 875. Searches performed in conformity with standard police procedures are reasonable under the Fourth Amendment. *Vehorn,* 717 N.E.2d at 875. However, the State must present more than the mere conclusory testimony of an officer that the search was conducted as a routine inventory. *Stephens,* 735 N.E.2d at 282; *Rabadi v. State,* 541 N.E.2d 271, 275 (Ind.1989). "The circumstances surrounding the intrusion must also indicate that the search was part of established and routine department procedures which are consistent with the protection of the police from potential danger and false claims of lost or stolen property and the protection of the property of those arrested." *Rabadi,* 541 N.E.2d at 275. Lewis concedes that the impoundment was proper, but as-

8. The State proffered Exhibit 1, purported to be a copy of the printed policy regarding impoundment, but following a defense objection based upon an alleged failure by the State to produce the policy during discovery, and a brief discussion between both counsel, the exhibit was not admitted into evidence. However, Trooper Jack testified that he followed the state police procedures on impoundment and detailed the steps he took to comply with these procedures. In particular, Trooper Jack testified that he and Officer Schmidt inventoried "everything that was in the vehicle" at the time it was stopped, that the inventory was completed on notebook paper, that the impoundment was completed on "bureau of motor vehicles form ... 322B," that he was "over [Officer Schmidt's] shoulder watching him do [the inventory]," that a property card and receipt were prepared for the contraband items removed from the vehicle during the inventory, that the items removed as contraband were bagged, marked, and transferred to the evidence lockers at the Fort Wayne State Police post, and that the other items were returned to the vehicle, locked inside it and sent to be impounded, and that Lewis was given a copy of bureau of motor vehicles impoundment form 322B. Record at 550–51, 579. Defense counsel did not object to this testimony.

serts that the search was unreasonable because the State failed to introduce as evidence the written procedures for vehicle impoundment and inventory. Accordingly, we must determine whether the inventory search was performed in conformity with regulations that are reasonable under the Fourth Amendment. *See Vehorn,* 717 N.E.2d at 875.

In *Vehorn,* our Supreme Court found reasonable an inventory search conducted after the driver had been arrested for driving a stolen vehicle. The *Vehorn* inventory was conducted at the crime scene, rather than an impoundment lot, and the arresting officer testified that the search "was in accordance with 'standard Riverdale Police Department policies.' " 717 N.E.2d at 875. In addition, the officer completed formal inventory sheets and took pictures to establish an accurate record of the entire contents of the vehicle, rather than just the incriminating evidence. *Id.* In the present case, Trooper Jack decided to impound the vehicle pursuant to statute because the vehicle had no valid registration or license plate and could not be legally driven. Trooper Jack testified that his department utilized a printed policy regarding vehicle impoundment, that the policy was standard operating procedure, and that he followed the state police procedures for impoundment. He further testified that the vehicle would have been inventoried "no matter what," as police policy required him to complete an inventory when taking custody of the vehicle and impounding it. Record at 580. According to Trooper Jack, he first contacted the post to arrange for a wrecker to tow the vehicle. The inventory search was then conducted at the scene, prior to towing the vehicle. Trooper Jack and Officer Schmidt inventoried "everything that was in the vehicle at the time that we stopped it" by recording the inventory on notebook paper, with the actual impoundment completed on a bureau of motor vehicles form 322B. Record at 550–51. Trooper Jack further testified that none of the contraband was in sight when he and Officer Schmidt looked into the vehicle, and that they "were just inventorying the contents of the car." Record at 579. According to Trooper Jack, the handwritten inventory included all items located within the vehicle, while the property record and receipt listed the items that were removed from the vehicle, bagged, marked, and placed in the evidence lockers at the Fort Wayne post.

While the better practice would have been for the State to have tendered into evidence the actual State Police policy and procedure concerning vehicle impoundments, Trooper Jack adequately detailed the actions he and Officer Schmidt took while inventorying the contents of the vehicle. The hand-written inventory consisted of a list of all items of personal property located within the vehicle, while property cards and receipts were prepared for the items of contraband that were removed from the vehicle. In addition, Trooper Jack testified that bureau of motor vehicles form 322B concerning impounded vehicles was completed and a copy was provided to the defendant. Finally, the vehicle was actually impounded. The record before us provides sufficient detail as to the actions Trooper Jack and Officer Schmidt took in conducting the inventory in compliance with the "state police procedure on impoundment." Record at 550. The circumstances in this case indicate that the inventory was reasonable under the Fourth Amendment.

Our analysis of the propriety of the vehicle inventory under the Indiana Constitution requires that the intrusion be reasonable " 'in the totality of the circumstances.' " *Mitchell,* 745 N.E.2d at

786. Again, we look to the circumstances of this case to determine whether the police behavior was reasonable. After confirming that the license plate and registration for the vehicle were invalid, Trooper Jack advised Lewis that the vehicle would have to be impounded. This decision was made prior to the pat-down search of Lewis and the subsequent discovery of marijuana on Lewis's person. According to Trooper Jack, because the inventory process was part of the standard impoundment procedure for vehicles, Lewis's vehicle would have been inventoried even if Lewis had not been placed under arrest. In conducting the inventory, Trooper Jack and Officer Schmidt inventoried the entire contents of the vehicle, recorded the contents on notebook paper, completed the bureau of motor vehicles impoundment form, prepared property cards and receipts for the items removed from the vehicle, and bagged, marked, and placed these items in the evidence lockers of the Fort Wayne police post. The inventory search was reasonable for purposes of the Indiana Constitution. Accordingly, the trial court did not abuse its discretion in admitting into the evidence the items confiscated during the inventory.

## III

### Consecutive Sentences

▆▆▆▆▆ Finally, Lewis argues that the trial court erred in ordering him to serve his sentences consecutively because it failed to find at least one aggravating factor. The State concedes that the trial court must give a sentencing statement which contains the reasons for imposition of the consecutive sentence. Our review of the record reveals that the trial court indeed failed to articulate any reason for imposing the consecutive sentences, and we are unable to determine from the record whether the trial court engaged in the evaluative processes necessary for imposing consecutive sentences. When, as here, the trial court fails to provide an explanation for imposing consecutive sentences, or the explanation appears inadequate, this court is not required to remand for resentencing by the trial court. Instead, under appropriate circumstances, this court may modify the sentence. *Simmons v. State*, 746 N.E.2d 81 (Ind.Ct.App.2001), *trans denied*. Accordingly, we modify the trial court's sentencing order to provide that the sentences run concurrently rather than consecutively, and leave intact the remainder of the trial court's sentencing order. *See Allen v. State*, 722 N.E.2d 1246, 1254 n. 9 (Ind.Ct.App.2000).

### Conclusion

The convictions for Possession of Marijuana and Possession of Cocaine are affirmed, and the trial court's sentence is modified to provide that the sentences run concurrently rather than consecutively. The remainder of the trial court's sentencing order is unchanged, such that the sentences for Possession of Marijuana and Possession of Cocaine are suspended, and the defendant is placed upon three years probation, subject to the terms and conditions for probation set forth by the trial court.

FRIEDLANDER, J., and RILEY, J., concur.