**James D. PERKINS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 03A01–0401–CR–12.

Court of Appeals of Indiana.

July 30, 2004.

Mark A. Ryan, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant, James Perkins, was convicted of Operating a Vehicle While Intoxicated Causing Serious Bodily Injury, a Class D felony.[1] Upon appeal, Perkins presents two issues for our review, (1) whether the trial court erred in denying Perkins' motion to dismiss, and (2) whether the evidence is sufficient to support his conviction.

We affirm.

The facts most favorable to the conviction reveal that on the afternoon of April 26, 2000, Perkins pulled his truck out of a gas station, darted across two lanes of traffic, and then headed east on 25th Street in Columbus, Indiana. As Perkins approached the intersection of 25th Street and Fairlawn Drive, he slowed his truck to a near stop. A motorcyclist, Ewing Dan Estep, was westbound on 25th Street and slowed as he approached the Fairlawn Drive intersection to observe the truck and what Perkins was intending to do. After seeing Perkins nearly stop, Mr. Estep then continued through the intersection. Perkins then "gun[ned] it" as he turned left across 25th Street, striking the motorcycle Mr. Estep was riding. Transcript at 320.

Detective Jeffrey Williams[2] of the Columbus Police Department was dispatched to the scene of the accident. Upon arriving at the scene, emergency personnel were already taking care of Mr. Estep. Detective Williams approached the truck he believed had been involved in the accident and encountered Brandon Smith, who identified Perkins as the driver of the truck. Detective Williams noticed that Smith's clothing smelled of burnt marijuana.

Detective Williams then approached Perkins, and upon talking to him, Detec-

---

1. Ind.Code § 9–30–5–4(a)(3) (Burns Code Ed. Supp.2003).

2. At the time of the accident, Detective Williams was a patrol officer and field training officer with the Columbus Police Department.

tive Williams detected an odor of burnt marijuana on Perkins' clothing and on his breath. Detective Williams also observed that Perkins' eyes were glassy and blood-shot and that his speech was thick. After confirming that Perkins was the driver of the truck and that he was not injured, Detective Williams decided to conduct four field sobriety tests upon Perkins—the horizontal gaze nystagmus test, the finger count test, the alphabet recital test, and the walk and turn test. Perkins failed all four tests. Based upon his training and experience, Detective Williams determined that Perkins was intoxicated at the time of the accident. After being read Indiana's implied consent law and upon Detective Williams' request, Perkins agreed to submit to a chemical test. Detective Williams placed Perkins in his patrol car and returned to complete his immediate investigation. When inspecting the truck, Detective Williams detected the odor of burnt marijuana inside the truck. While en route to the hospital, Perkins informed Detective Williams that he no longer agreed to submit to the chemical test.

An accident investigator with the Indiana State Police determined that the impact occurred across the center dividing line, in the westbound lane in which Mr. Estep was traveling and that the primary cause was Perkins' failure to yield to Mr. Estep's motorcycle. As a result of the accident, Estep suffered a fractured dislocation of the neck which rendered him a quadriplegic.

On August 15, 2000, the State charged Perkins with Count I, operating a vehicle while intoxicated, a Class A misdemeanor, Count II, operating a vehicle with a schedule I or II controlled substance or its metabolite in the body, a Class C misde-

meanor, and Count III, operating a vehicle with .10% or more blood alcohol content, a Class D felony. The State later filed an amended information for Count III, charging Perkins with operating a vehicle while intoxicated causing serious bodily injury, a Class D felony. The State also added an additional charge, Count IV, operating a vehicle with a schedule I or II substance in the body causing serious bodily injury, a Class D felony.

On May 7, 2001, Perkins filed an "Affirmed Motion to Dismiss" and supporting memorandum, asserting that the deputy prosecutor was without authority to bring charges against him because he was appointed by Joseph Koenig, the elected Prosecutor at the time for Bartholomew County,[3] whom Perkins alleged was not properly in office as he had not filed a proper bond pursuant to statute. The trial court denied Perkins' motion at a hearing on May 21, 2001. On August 31, 2001, Perkins filed a second motion to dismiss and suggestion of defects concerning Prosecutor Koenig's oath and bond. On September 6, 2001, Perkins filed a list itemizing the claimed defects in the bond. The trial court held a hearing on Perkins' second motion to dismiss on September 14, 2001, at the conclusion of which the court denied the motion. On December 10, 2001, Perkins filed a motion for recusal of judge, which the trial court granted on February 18, 2002. On March 5, 2002, Judge Monroe of Bartholomew Superior Court 1 assumed jurisdiction over the cause.

On March 20, 2002, Perkins filed a motion to reconsider the denial of his previous motions to dismiss. The court denied the motion to reconsider by entry of March 27, 2002. On March 27, 2003, Per-

3. Joseph Koenig's first term as the Bartholomew County Prosecutor began on January 1, 1979. Koenig served continuously as the Bartholomew County Prosecutor through his last four-year term which ended December 31, 2002.

kins filed a motion to disqualify William Nash, the current elected Prosecutor for Bartholomew County.[4] Perkins filed a suggestion of defects concerning the oaths and bonds of both Prosecutor Nash and Judge Monroe on April 3, 2003. The court denied the motions by entry of April 4, 2003.[5]

On April 14, 2003, the State moved to dismiss Counts I, II, and IV, and the cause proceeded to trial the following day on Count III. At the conclusion of the evidence, the jury found Perkins guilty of operating a vehicle while intoxicated causing serious bodily injury, a Class D felony. The trial court then sentenced Perkins to two years imprisonment, with one year suspended to be served on probation.

Upon appeal, Perkins argues that the trial court erred in denying his motion to dismiss the charges against him. A criminal defendant has the burden of proving by a preponderance of the evidence every fact essential to support a motion to dismiss an information. Ind.Code § 35–34–1–8(f) (Burns Code Ed. Repl.1998); *Lewis v. State*, 755 N.E.2d 1116, 1121 (Ind.Ct. App.2001). Because a defendant is appealing from a negative judgment, we will reverse the trial court's ruling only if the evidence is without conflict and leads inescapably to the conclusion that dismissal was proper. *Lewis*, 755 N.E.2d at 1121.

■ Indiana Code § 35–34–1–4(a) (Burns Code Ed. Repl.1998) provides the grounds upon which a court may dismiss an information, including "[a]ny ... ground that is a basis for dismissal as a matter of law." Here, Perkins moved to dismiss the information against him by claiming a violation of Indiana Code 5–4–1.

Specifically, Perkins claimed that Prosecutor Koenig was not lawfully in office when the instant charges were filed because Prosecutor Koenig's bond did not comply with the requirements of the applicable statutes. Thus, Perkins argued that the deputy prosecutor, who was appointed by Prosecutor Koenig, was without authority to file charges against Perkins, and therefore, the cause should have been dismissed.

Indiana Code § 33–14–1–2 (Burns Code Ed. Repl.1998) provides that "[e]very person elected to the office of prosecuting attorney, before entering upon the duties of his office, shall execute a bond in the manner prescribed by IC 5–4–1." Indiana Code § 5–4–1–20 (Burns Code Ed. Repl. 2001) sets forth the bond requirements for prosecuting attorneys as follows:

"(a) A person elected to the office of prosecuting attorney shall execute an individual surety bond for the faithful performance of the duties of the office. The amount of the bond must be at least eight thousand five hundred dollars ($8,500).

(b) A person elected to the office of prosecuting attorney may not take office until that person has filed a bond:

(1) in the office of the county recorder of the county in which the person resides; and

(2) within ten (10) days after the bond is issued.

(c) The cost of the bond shall be paid by the county. For multiple county judicial circuits, the cost shall be paid by each county in the judicial circuit in the manner provided by IC 33–13–12–4.

(d) A bond must be:

---

4. William Nash was elected as the Bartholomew County Prosecutor in November 2002 for a four-year term beginning January 1, 2003.

5. Upon appeal, Perkins does not challenge the court's denial of his motion to dismiss challenging the authority of Prosecutor Nash or Judge Monroe.

(1) executed by the person elected prosecuting attorney and one (1) or more freehold sureties; and

(2) payable to the state as provided in section 10 of this chapter.

(e) A bond is not void on first recovery, and suits may be brought on the bond until the penalty is exhausted.

(f) If a bond has been legally certified, any of the following have the same effect in evidence as the bond:

(1) A copy of the bond.

(2) A record of the bond.

(3) A copy of a record of the bond.

(g) The county recorder of the county in which the person elected prosecuting attorney resides shall record the bond in an official bond register."

Indiana Code § 5–4–1–9 (Burns Code Ed. Repl.2001) also provides that "[a]n officer required to give an official bond shall give the bond before the commencement of his term of office. If the officer fails to give the bond before that time, the officer may not take office." Perkins asserts that a reasonable interpretation of the above statutes is that the elected prosecutor is required to comply with the bond provisions at the beginning of each term.

There is nothing in I.C. § 33–14–1–2, I.C. § 5–4–1–9, or I.C. § 5–4–1–20 which requires a prosecuting attorney to file a new bond at the beginning of each term, only that a bond be filed before the commencement of his term of office. Here, Prosecutor Koenig executed the required bond at the beginning of his first term and such bond was effective for a term of four years beginning January 1, 1979 and ending on December 31, 1982. Prior to the beginning of his second term as the Bartholomew County Prosecutor, Koenig filed a second bond on December 20, 1982 which provided that it was effective January 1, 1983 "and until his successor is elected and

qualified." State's Exhibit 2. The second bond remained in effect for each successive term Koenig was elected. Prosecutor Koenig thus complied with the statutes' requirements that he file a bond prior to the commencement of his term of office to ensure his faithful performance of the duties of the office of prosecuting attorney.

■ Perkins asserts that even if the statute did not require Koenig to file a separate bond for each elected term, that the bond on file is defective in that it does not contain Koenig's signature or indicate that it was "executed" by Koenig. *See* I.C. § 5–4–1–20(d)(1); Ind.Code § 5–4–1–13 (Burns Code Ed. Repl.2001) (providing that "[a]ll official bonds required by statue shall be executed by the principal and one (1) or more freehold sureties . . . ."). Perkins also asserts that the bond is defective in that State Farm Fire and Casualty Co., the named surety, is not a freehold surety as required by statute. *See* I.C. § 5–4–1–20(d)(1).

Indiana Code § 5–4–1–12 (Burns Code Ed. Repl.2001) provides that "No official bond shall be void because of defects in form or substance or in the approval and filing thereof." That statute continues that "upon the suggestion of such defects, such bond shall be obligatory as if properly executed, filed and approved." *Id.* Thus, even if Perkins' alleged defects as to Prosecutor Koenig's bond are true, such defects do not defeat Koenig's authority as the elected prosecutor of Bartholomew County. Further, Perkins has cited no authority which suggests that defects in a prosecuting attorney's bond strip the prosecutor of his authority to hold that office and execute his or her duties. We therefore conclude that the trial court did not err in denying Perkins' motion to dismiss.

■ Perkins also contends that the evidence was insufficient to support his conviction, asserting that the State failed to

prove that he was intoxicated. When reviewing a claim of insufficient evidence, we neither reweigh evidence nor judge the credibility of witnesses. *Lycan v. State,* 671 N.E.2d 447, 456 (Ind.Ct.App.1996). We consider only the evidence which is favorable to the judgment along with the reasonable inferences to be drawn therefrom to determine whether there was sufficient evidence of probative value to support a conviction. *Id.* We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *VanMatre v. State,* 714 N.E.2d 655, 658 (Ind.Ct.App.1999).

 Indiana Code § 9–30–5–4 provides, in pertinent part, "A person who causes serious bodily injury to another person when operating a motor vehicle ... *while intoxicated* commits a Class D felony." To prove that Perkins was intoxicated, the State was required to present evidence from which the jury could have concluded beyond a reasonable doubt that Perkins was:

> "under the influence of: (1) alcohol; (2) a controlled substance (as defined in IC 35–48–1); (3) a drug other than alcohol or a controlled substance; or (4) a combination of alcohol, controlled substances, or drugs; so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties to an extent that endangers a person." Ind.Code § 9–13–2–86 (Burns Code Ed. Repl.1997).

Proof of intoxication may be established by showing impairment. *Ballinger v. State,* 717 N.E.2d 939, 943 (Ind.Ct.App.1999). Evidence of the following can establish impairment: impaired attention and reflexes, watery and bloodshot eyes, odor of marijuana upon one's breath, and failure of field sobriety tests. *See id.*

At trial, Detective Williams testified about his training and experience as a police officer with regard to determining whether an individual is intoxicated. Detective Williams testified that he detected the odor of burnt marijuana on Perkins' clothing and breath and inside the passenger compartment of the truck Perkins had been driving. Detective Williams also noted that Perkins' eyes were glassy and bloodshot and that his speech was thick, all signs which Detective Williams associated with someone under the effects of marijuana. He further observed that Perkins lacked sequential thinking and that he had to concentrate to understand his questions.

Detective Williams also testified as to the purpose of field sobriety tests and explained in detail how each test is administered and what a police officer looks for as indicators of intoxication. Detective Williams further testified that he explained and demonstrated to Perkins how each test was to be performed. He then described in detail for the jury how Perkins performed on each test, explaining that Perkins' performance indicated that his attention was divided and his focus was lessened. Specifically, Detective Williams testified that the horizontal gaze nystagmus test revealed that Perkins was unable to move his eyes in a smooth manner and that his eyes were twitching; on the finger count test, Perkins did not follow instructions to hold his hand up and failed to count back from four to one as instructed; when asked to recite a portion of the alphabet, Perkins sang the alphabet in a childish, joyful manner, and did not stop at the letter "Q" as instructed; and finally, on the walk and turn test, Perkins did not remain in position during instructions, turn around as instructed and demonstrated, and had to ask for clarification on how to

complete the test. Based upon his performance, Detective Williams concluded that Perkins failed each of the four tests. Detective Williams testified that his training and experience, the smell of burnt marijuana on Perkins' clothes and breath, and Perkins' performance on the four field sobriety tests led him to conclude that Perkins was intoxicated.

In spite of this evidence, Perkins argues that there was insufficient evidence to prove that he was intoxicated. Specifically, Perkins discounts the mistakes he made during the field sobriety tests and thus asserts that the State presented only minimal evidence as to whether he was impaired. Perkins further asserts that the fact that Detective Williams smelled burnt marijuana established nothing more than a mere suggestion that Perkins may have used marijuana. Perkins then directs our attention to evidence which he asserts proves that he had not been using marijuana on the day of the accident. In all, Perkins' arguments amount to nothing more than a request for us to reweigh the evidence and judge the credibility of witnesses, a task we will not undertake upon appeal. The State presented sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Perkins was intoxicated at the time of the accident.

The judgment of the trial court is affirmed.

MAY, J., and VAIDIK, J., concur.