**Ronzelle TAYLOR, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0809–CR–795.**

Court of Appeals of Indiana.

April 7, 2009.

Timothy J. Burns, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROWN, Judge.

Ronzelle Taylor appeals his conviction for possession of marijuana as a class A misdemeanor.[1] Taylor raises one issue, which we revise and restate as whether the trial court abused its discretion by admitting the marijuana seized from Taylor's person. We reverse.

The relevant facts follow. On October 1, 2007, Cumberland Police Department Officer Brian Archer observed Taylor driving a vehicle without a seatbelt and observed that the passenger, Alexander Hargis, was also not wearing a seatbelt. Officer Archer activated his emergency lights, stopped the vehicle, and approached Taylor, asking him for his identification and registration. He received identification cards from Taylor and Hargis and returned to his vehicle, where he called for backup. While Officer Archer was filling out traffic tickets for Taylor and Hargis, Cumberland Police Department Officer Nichole Gilbert arrived on the scene and recognized Taylor and Hargis by name. Officer Gilbert contacted a detective, who asked if he could speak to Taylor and Hargis in reference to an ongoing investigation regarding a gang known to carry weapons.

Officer Archer had Taylor exit his vehicle and explained why he had stopped Taylor and how he could pay for or contest his traffic ticket. He gave Taylor the ticket, returned his license and registration, and told him he was "free to go." Tran-

script at 10. He then asked if Taylor would be willing to go to the police station and speak to a detective in reference to an investigation. Taylor agreed, and Officer Archer informed Taylor that he would do a pat down search for officer safety. He asked Taylor to turn around, put his hands on top of his head and interlock his fingers, and then he "started up at the collar of [Taylor's] shirt and worked [his] way down." *Id.* at 14. In Taylor's front pocket, Officer Archer found a plastic baggy containing a green, leafy substance he believed from his training and experience to be marijuana. A forensic chemist later determined that the substance was 13.33 grams of marijuana.

The State charged Taylor with possession of marijuana as a class A misdemeanor. At a bench trial, Taylor moved to suppress the marijuana, arguing that Officer Archer had violated his rights secured by the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. The trial court denied the motion to suppress and found Taylor guilty as charged, sentencing him to a term of 365 days with 363 days suspended.

▮ The sole issue is whether the trial court abused its discretion by admitting the marijuana seized from Taylor's person. We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Noojin v. State,* 730 N.E.2d 672, 676 (Ind.2000). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State,* 678 N.E.2d 386, 390 (Ind.1997), *reh'g denied.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admis-

---

1. Ind.Code § 35–48–4–11 (2004).

sion constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind.Ct.App. 1999), *reh'g denied, trans. denied.* Taylor argues that Officer Archer violated: (A) the Seatbelt Enforcement Act, Ind.Code § 9–19–10–3.1; and (B) Taylor's rights secured by Article 1, Section 11 of the Indiana Constitution. He argues that, because of these violations, the trial court abused its discretion by admitting the marijuana into evidence.[2] We will address his contentions separately.

### A. *Seatbelt Enforcement Act*

■ Taylor argues that Officer Archer violated the Seatbelt Enforcement Act by detaining and searching Taylor "as part of an extended investigation." Appellant's Brief at 6. Ind.Code § 9–19–10–2 provides:

> Each occupant of a motor vehicle equipped with a safety belt that:
>
> (1) meets the standards stated in the Federal Motor Vehicle Safety Standard Number 208 (49 CFR 571.208); and
>
> (2) is standard equipment installed by the manufacturer;
>
> shall have a safety belt properly fastened about the occupant's body at all times when the vehicle is in forward motion.

The Seatbelt Enforcement Act provides that "a vehicle may be stopped to determine compliance with this chapter. However, a vehicle, the contents of a vehicle, the driver of a vehicle, or a passenger in a vehicle may not be inspected, searched, or detained *solely because of a violation of this chapter.*" Ind.Code § 9–19–10–3.1 (emphasis added). The Indiana Supreme Court has clarified that, under the Seatbelt Enforcement Act,

a police officer may not stop a motorist in Indiana for a possible seat belt violation unless that officer reasonably suspects that the driver or passenger in the vehicle is not wearing a seat belt as required by law. This reasonable suspicion exists where the officer observes the driver or passenger under circumstances (e.g. bodily movement, distance, angle, lighting, weather) that would cause an ordinary prudent person to believe that the driver or passenger is not wearing a seatbelt as required by law.

*Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999).

Here, Officer Archer observed that neither Taylor nor Hargis was wearing a seatbelt and pulled them over. Taylor does not challenge whether Officer Archer had reasonable suspicion to do so, and, in any event, we hold based on the facts before us that he did have reasonable suspicion to stop Taylor for his failure to wear a seatbelt. Rather, Taylor asks us to determine whether Officer Archer searched him solely because of a violation of the Seatbelt Enforcement Act.

While Officer Archer was filling out the uniform traffic tickets, Officer Gilbert arrived on the scene and recognized Taylor and Hargis by name. She contacted a detective who asked if he could speak to Taylor and Hargis in reference to an ongoing investigation. Officer Archer gave Taylor his ticket, license, and registration and told him that he was free to go. At this point, the traffic stop had terminated. Officer Archer then asked if Taylor would be willing to accompany him to the police station to speak to a detective in reference to an investigation. Taylor agreed and, out of concern for his own safety, Officer

---

**2.** Taylor does not argue on appeal that Officer Archer violated his rights secured by the

Fourth Amendment to the United States Constitution.

Archer performed a pat down search during which he found the bag of marijuana.

The traffic stop regarding Taylor's failure to wear his seatbelt had terminated. Taylor was searched because of Officer Archer's concern for his own safety while transporting Taylor. Given these facts, we cannot say that Officer Archer searched Taylor solely because of Taylor's failure to fasten a seatbelt about his body while driving. Officer Archer's actions did not violate the Seatbelt Enforcement Act. *See State v. Washington,* 898 N.E.2d 1200, 1207 (Ind.2008) (holding that prior Indiana cases discussing the Seatbelt Enforcement Act should not be construed to "prohibit police from questioning motorists or seeking consent to search *following a terminated traffic stop.*" (emphasis added)).

## B. *Article 1, Section 11*

■■■ Article 1, Section 11 of the Indiana Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

Notwithstanding the textual similarity of Section 11 to that of the Fourth Amendment of the United States Constitution, Section 11 is interpreted separately and independently from Fourth Amendment jurisprudence. *Washington,* 898 N.E.2d at 1205–1206 (citing *Mitchell v. State,* 745 N.E.2d 775, 786 (Ind.2001)). The purpose of this section is to protect those areas of life that Hoosiers consider private from unreasonable police activity. *Id.* at 1206 (citing *State v. Quirk,* 842 N.E.2d 334, 339–340 (Ind.2006)). The Indiana Constitution may protect searches that the Fed-

eral Constitution does not. *Id.* Section 11 should be applied to protect people from unreasonable search and seizure. *Id.* (citing *Brown v. State,* 653 N.E.2d 77, 79 (Ind.1995)). When police conduct is challenged as violating this section, the burden is on the State to show that the search was reasonable under the totality of the circumstances. *Id.* (citing *Quirk,* 842 N.E.2d at 340; *State v. Bulington,* 802 N.E.2d 435, 438 (Ind.2004)). The determination of the reasonableness of a search and seizure under the Indiana Constitution turns "on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* (quoting *Litchfield v. State,* 824 N.E.2d 356, 361 (Ind.2005)).

We find *Lewis v. State,* 755 N.E.2d 1116 (Ind.Ct.App.2001), instructive. In *Lewis,* an Indiana State Trooper observed the defendant traveling 69 miles per hour in a 55 mile per hour zone. The trooper initiated a traffic stop and noted that the vehicle bore a Colorado license plate that had been expired for over one year. When stopped, the defendant initially produced an expired Colorado registration certificate and an expired Colorado driver's license. He then produced a valid temporary driver's license from Michigan and claimed that he had been living in Detroit, Michigan for four months, although he could not remember his current address. The defendant also produced traffic citations from Colorado, Kansas, Illinois, and Marion County, Indiana. The trooper informed the defendant that the vehicle would have to be impounded because the license plate had been expired for more than one year. The defendant requested that he be transported to the next available telephone, and the trooper

agreed, advising that he would need to pat down the defendant prior to placing him inside the police vehicle. During the pat down search, the trooper found marijuana on the defendant's person, and he placed the defendant under arrest. An inventory search of the vehicle revealed the presence of cocaine and marijuana, and the defendant was charged with possession of marijuana, possession of paraphernalia, and possession of cocaine.

The defendant filed a motion to suppress the evidence obtained during the initial pat down search, alleging that the search violated the Federal and Indiana Constitutions.[3] We held under the Federal Constitution that, even if the trooper lacked the belief that the defendant posed a risk of danger, the increased risk of placing the defendant, a potentially armed individual, into the police vehicle justified the trooper's pat down search of the defendant prior to placing him inside the police vehicle. *See Lewis,* 755 N.E.2d at 1124. Thus, we concluded that the search did not violate the Federal Constitution. *See id.*

■ We also found that the search did not violate the Indiana Constitution, reasoning as follows:

Here, [the trooper] testified that [the defendant] was initially stopped for speeding and subsequently determined to be driving an automobile with an expired license plate. Because the automobile could not be legally driven, [the trooper] was authorized, by statute, to impound the automobile. Rather than leave [the defendant] along the side of the interstate, [the trooper] agreed to transport [the defendant] to the [next] exit where he could access a telephone. However, [the trooper] advised [the defendant] that he would conduct a pat-

down search of his person prior to placing him inside the police vehicle. Given the circumstances surrounding the initial stop and subsequent pat-down, we conclude that it was reasonable for [the trooper] to conduct a pat-down search of [the defendant] prior to placing him inside the police vehicle. The increased risk of danger to [the trooper] of transporting an individual that might be armed, provided sufficient justification for the pat-down search. Accordingly, the trial court correctly, under the Indiana Constitution, denied the motion to suppress evidence obtained during the pat-down search.

*Id.* at 1024–1025. Thus, where a person who is not under arrest agrees to be transported by an officer, the increased risk of danger to the officer of transporting an individual who might be armed provides sufficient justification for a pat down search of the person under the Indiana Constitution.

■ We find the present case distinguishable. Here, Officer Archer asked Taylor if he was willing to speak to another detective in reference to an ongoing investigation, and Taylor responded that he was. The record does not establish, however, that Taylor agreed to be transported by Officer Archer to speak to the detective. Rather, after Taylor responded that he was willing to speak to the detective, Officer Archer immediately asked him to turn around, put his hands on top of his head, and interlock his fingers while the officer searched him. At that point Taylor was unlawfully detained without his consent. Prior to the search, Taylor was not under arrest and could have driven himself

---

**3.** The defendant also challenged the constitutionality of the inventory search of his vehicle, but our analysis of that issue is not relevant for present purposes. *See Lewis,* 755 N.E.2d at 1125–1127.

to the police station to speak with the detective.

We conclude that, under the totality of the circumstances, Officer Archer's detention and search of Taylor's person was not voluntary or reasonable and therefore violated the protections provided by Article 1, Section 11 of the Indiana Constitution. *See Wilson v. State,* 745 N.E.2d 789, 793 (Ind.2001) (holding that, although it is generally reasonable for a prudent officer to pat down persons placed in his patrol car, the pat down search of the defendant violated the Fourth Amendment where there was no reasonably necessary basis for placing the defendant in the squad car). Consequently, the trial court abused its discretion by admitting evidence stemming from the search. We therefore reverse Taylor's conviction for possession of marijuana.

For the foregoing reasons, we reverse Taylor's conviction for possession of marijuana as a class A misdemeanor.

Reversed.

KIRSCH, J. and BRADFORD, J. concur.