Harold Brandon **HARRIS**,
Appellant–Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 06A01–0612–CR–573.

Court of Appeals of Indiana.

Dec. 31, 2007.

Transfer Denied March 13, 2008.

Deborah K. Smith, Thorntown, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MAY, Judge.

Harold B. Harris appeals his conviction of possession of methamphetamine, a Class D Felony.[1] Harris moved to suppress the methamphetamine police found in a pill bottle in his pocket, claiming the search was unconstitutional. The trial court denied his motion, and a jury found Harris guilty of possession of methamphetamine. Harris' restated issues on appeal are: 1) whether the removal of the pill bottle was justified; 2) whether the search inside the

pill bottle was justified; and 3) whether the evidence was discovered through a search incident to arrest. Because the officer was prohibited from opening the pill bottle during this frisk for weapons, we reverse.

**FACTS AND PROCEDURAL HISTORY**

On December 20, 2005, a Department of Child Services (DCS) caseworker in Boone County received an anonymous tip that, at a specific residence, there were children who had sores on their bodies and there might be a methamphetamine lab in the basement. Lebanon Police accompanied the caseworker to the residence. When they arrived at the residence, they were greeted by the mother of the three children. The mother claimed she was the only adult present in the house. The caseworker asked to see the basement to ensure the children's living area was safe. After securing a dog, the mother allowed the caseworker and police to enter the basement.

About a minute after entering the basement, the caseworker saw Harris hiding behind a water heater in a corner. Officer Gregory Hood detained Harris. Officer Hood told Harris he was not under arrest but placed him in "handcuffs for his and [Officer Hood's] protection." (Tr. at 121.) Officer Hood then asked Harris whether he had any weapons on him. Harris reported a pocketknife in his right front pocket. Officer Hood patted Harris' right front pocket and felt "bulky, metallic objects." (*Id.*) Officer Hood removed a knife, a large key ring, and a blue plastic pill bottle. Harris was cooperative and did

---

1. Ind.Code § 35–48–4–6(a). In the same proceeding, the jury found Harris not guilty of dealing in methamphetamine.

not make any furtive movements or attempt to flee.

Officer Hood shined a flashlight through the bottle and saw "a silhouette of a baggie . . . and maybe a powdery-looking substance in there." (*Id.* at 104.) His prior training and experience led him to believe the bottle contained a controlled substance. He then removed the lid to see the substance inside the bottle. After searching inside the bottle, Officer Hood confirmed Harris had an outstanding warrant and placed him under arrest. Another officer took Harris to jail. Officer Hood then went to the police department where the substance in the bottle was determined to be methamphetamine.

## DISCUSSION AND DECISION

■ A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *Fentress v. State*, 863 N.E.2d 420, 423 (Ind.Ct.App.2007). We reverse for an abuse of discretion only when the court's decision was clearly against the logic and effect of the facts and circumstances before it. *Id.*

### 1. *Type of Search*

■ The trial court found the search occurred during a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The State argues the methamphetamine was properly seized pursuant to a search incident to Harris' arrest. Although Officer Hood told Harris he was not under arrest, the State notes a search can be "incident to arrest" even though a defendant has not been arrested, so long as there was probable cause to arrest at the time of the search.

A suspect is considered under arrest when a police officer interrupts the freedom of the accused and restricts his liberty of movement. The fact that a police officer does not inform a defendant he is under arrest prior to a search does not invalidate the search incident to arrest exception as long as there is probable cause to make an arrest.

Thus, an arrest is lawful if it is supported by probable cause. Probable cause for an arrest exists if at the time of the arrest the officer has knowledge of facts and circumstances which would warrant a man of reasonable caution to believe that the suspect has committed the criminal act in question. A police officer's subjective belief concerning whether he had probable cause to arrest a defendant has no legal effect.

*Fentress*, 863 N.E.2d at 423 (internal citations and quotations omitted) (holding that although officers had not placed defendant under arrest, search was incident to arrest because police had probable cause to arrest).

To demonstrate Officer Harris had probable cause to arrest Harris prior to the search, the State relies on *Armour v. State*, 762 N.E.2d 208 (Ind.Ct.App.2002), *trans. denied*, 774 N.E.2d 512 (Ind.2002):

[The arresting Officer] saw in plain view a crack pipe lying on the bed, a black bag with test tubes in it, glasses with rubbing alcohol in them on the bedside table, several plastic bags, a plastic bag with what appeared to be marijuana in it, and a white or yellow residue on the table. After making these observations, it was reasonable for [the Officer] to believe that Armour and the other individuals in the hotel room had committed the crimes they were arrested for . . . Armour's warrantless arrest therefore was not in violation of the Fourth Amendment. Also, because [the Officer] found the cocaine at issue during a search of Armour incident to his lawful arrest, the warrantless search of Arm-

our did not violate his Fourth Amendment rights.

*Id.* at 215. *Armour* is distinguishable.

■ Although Officer Hood testified he saw aluminum foil with burned residue, Q-tips with blood on them, pipes with burned residue, and starter fluid—all of which Officer Hood believed were associated with drug use—those items are distinguishable from the drugs seen in *Armour*. In addition, because Officer Hood saw evidence indicating only past drug use, we find important the fact Harris was in the basement of a home, rather than a hotel room. While personal items and trash belonging to others are typically removed before a new person checks into a hotel room, the same is not necessarily the case when a person enters the basement of a home. We cannot say a person of reasonable caution would believe Harris had committed a crime simply because he was hiding behind the water heater and the basement contained evidence suggesting drugs had been used there in the past. Accordingly, we agree with the trial court this search occurred during a *Terry* stop.

### 2. *Scope of Terry Search*

Harris concedes Officer Hood was justified in performing a protective *Terry* search, but he argues Officer Hood could not remove the bottle from his pocket, open the pill bottle, or test the substance inside without a warrant.

#### A. *Removal of Bottle from Pocket*

■ The sole justification for a *Terry* search "is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry*, 392 U.S. at 29, 88 S.Ct. 1868. The purpose of a *Terry* search "is not to dis-cover evidence of a crime, but to allow the officer to pursue the investigation without fear." *Jackson v. State*, 669 N.E.2d 744, 747 (Ind.Ct.App.1996) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 373–75, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, 508 U.S. at 373, 113 S.Ct. 2130.

■ Officer Hood testified he removed the items from Harris' pocket because he "needed to know what it was to ensure it wasn't a weapon." (Tr. at 102.) In order to preserve officer safety, police may remove an item whose identity is not immediately discernable by touch and that might be used as a weapon. *See Owens v. State*, 497 N.E.2d 230, 232 (Ind.1986). Harris told Officer Hood he had a pocket-knife, and after placing Harris in handcuffs, Officer Hood needed to ensure he removed all potentially dangerous items. Accordingly, the removal of the pill bottle was permissible under *Terry*.

#### B. *Search inside the Pill Bottle*

■ However, Officer Hood's warrantless search inside the pill bottle went beyond the scope permitted by *Terry*. Officer Hood testified he told Harris during this search "[he] was not under arrest ... [and was] being placed in handcuffs for his and my protection." (Tr. at 121.) Harris was handcuffed, frisked, and all unknown items were taken from him. Once all unknown items were removed from Harris' pocket, Officer Hood's safety fears should have diminished, especially in light of the fact Harris was cooperating with the officer.

■ A two-part test governs the admissibility of contraband seized during a *Terry* search: "(1) whether the contraband

was detected during an initial patdown for weapons rather than during a further search; and (2) whether the identity of the contraband was immediately apparent to the officer." *Johnson v. State*, 710 N.E.2d 925, 928 (Ind.Ct.App.1999) (internal citations omitted).

Officer Harris removed the bottle from Harris' pocket during a patdown for weapons, but the contraband was detected only after Officer Hood shined a light into the bottle and opened it. Officer Hood could not have immediately identified the contents of the bottle as contraband by touch or sight because it was inside a blue pill bottle. Officer Hood never testified he thought the bottle might contain a weapon.

Our Supreme Court has held "the reasonable suspicion that gives authority to a *Terry* stop does not, without more, authorize the examination of the contents of items carried by the suspicious person." *Berry v. State*, 704 N.E.2d 462, 466 (Ind. 1998). The opening of the pill bottle, and thus the testing of the substance inside, was impermissible and the evidence should have been suppressed. *See, e.g., Burkett v. State*, 785 N.E.2d 276 (Ind.Ct.App.2003) (search inside a pill bottle during a *Terry* patdown and subsequent testing of the pills was impermissible); *Barfield v. State*, 776 N.E.2d 404 (Ind.Ct.App.2002) (officer's search inside a cigarette pack that had an odd weight distribution went beyond the permissible scope of a *Terry* patdown).

## CONCLUSION

The search at issue did not occur incident to arrest. While Officer Hood's removal of the pill bottle was reasonable under *Terry*, his subsequent search inside it was outside the scope of *Terry*. Therefore, the court abused its discretion when it admitted the evidence at Harris' trial, and we must reverse his conviction.

Reversed.

DARDEN, J., and CRONE, J., concur.