OPINION
BAKER, Judge.
Derek Clanton was found in possession of cocaine after he was stopped and searched by an off-duty police officer who was working part-time as a security officer for an apartment complex in a high crime area of Indianapolis. The cocaine was in a small plastic bag stuffed into a pen cap, and it was discovered after the officer removed the pen cap from Clanton’s pocket during a patdown of Clanton for weapons.
Claiming the cocaine was found during an unreasonable search and seizure in violation of the United States and Indiana Constitutions, Clanton filed a motion to suppress. The trial court denied the motion, and following a bench trial, Clanton was subsequently convicted of Possession of Cocaine, a class D felony.[1]
We conclude that the trial court erred when it admitted the cocaine into evidence because the arresting officer was not entitled to further search the contents of the pen cap after determining that the pen cap was not a weapon. Because we find this issue to be dispositive, we do not specifically address whether the initial stop and patdown were proper under the circumstances presented here. In reaching this decision, however, we also conclude that the Fourth Amendment does not categorically fail to apply to off-duty police officers working as security officers on private property.
*1021 Accordingly, we reverse the judgment of the trial court.

FACTS

On April 29, 2011, Officer Michael Price and Officer McFadden[2] of the Indianapolis Metropolitan Police Department (IMPD) were off duty and working part-time as security officers for an apartment complex in Marion County. The apartment complex, which Officer Price later testified is “not well lit” and in “a very well known high crime area [with a] lot of guns, a lot of weapons in that area at all times[,]” employed the officers in part to enforce its strict no-loitering policy on its property.[3] Tr. p. 5. Although the officers were off duty and purportedly working solely for the apartment complex, they wore their full IMPD uniforms and carried their IMPD-issued sidearm revolvers and ta-sers. The officers were also equipped with their department radios, which enabled them to “contact anyone in the city by radio.” Id. at 12.
At approximately 11:15 p.m., Officer Price and Officer McFadden were patrolling the apartment complex on foot when they observed three black men, one of whom was Clanton, standing outside a resident’s doorway for roughly five to fifteen seconds. Believing the men to be loitering, the officers immediately approached them. The men turned their backs as the officers approached. One of the officers asked what the men were doing, and Officer Price later testified that he could not recall whether he or Officer McFadden also verbally identified themselves as police officers at that time. One of the men fled on foot, and Officer McFadden gave chase.
The other two men, including Clanton, remained and followed all of Officer Price’s directions. Neither made any furtive movements or threatened Officer Price in any way. Nonetheless, Officer Price “immediately” withdrew his taser and instructed both men to place their hands on the wall. Tr. p. 10. He then proceeded to perform a patdown search of each man for weapons.
When Officer Price patted down Clan-ton, he felt a sharp object in Clanton’s right front pocket. Officer Price could not determine the identity of the object while it was in Clanton’s pocket, so he removed the object. Officer Price then saw that the object was a pen cap. Inside the pen cap was a clear plastic baggie, which Officer Price removed, and inside the baggie was a white powder that Officer Price believed to be narcotics. Officer Price then arrested Clanton.
Clanton was charged with possession of cocaine as a class D felony, and Clanton filed a motion to suppress the cocaine from being admitted as evidence at his trial. On December 1, 2011, the trial court held an evidentiary hearing during which Officer Price testified about the events leading up to Clanton’s arrest. About his initial reason for performing the patdown searches, Officer Price testified:
[W]hen you have two officers there, you kind of feel like you have a little bit *1022 more control. Once [Officer McFadden] was gone and one of the suspects fled, I immediately become more aware that the situation is going from, you know, good to worst and now I’m left alone with two individuals. So, what I did was immediately ... pull my taser out to try to show that, you know, I’m going to keep them under control and have them put their hands on the wall. And I went to pat-down [sic] one individual as the other one, you know, had his hands on the wall and I did that for both of them.
Tr. p. 10.
The following colloquy took place later in the hearing regarding Officer Price’s removal of the pen cap from Clanton’s pocket and the subsequent discovery of the cocaine:
[Officer Price:] Well, once I pulled it out I realized what ... the sharp object was but upon further investigation and looking at it, I seen [sic] a clear plastic baggie that, you known, obviously wasn’t stuffed down in there, it was hanging out of the pen cap. And amongst looking at that, after — I realize there’s a white powdery substance in that and that’s when, through my training and experience, [I] realized that’s a compound.
[State:] So once you pulled the pen cap out of the pocket was it immediately apparent that there were narcotics in [it?]
[Officer Price:] Yes, yes, like I say, because it was hanging out of the pen cap.
Id. at 11.
On cross-examination, the following exchange took place:
[Defense counsel:] And when you pulled it out you realized it was the top to a pen?
[Officer Price:] Yes.
[Defense counsel:] And it wasn’t until you inspected it that you found that there was contraband inside?
[Officer Price:] Well, I mean, it’s immediately apparent that there’s [sic] baggies inside it which is automatically, you know, we see that multiple times.
[Defense counsel:] When you pulled it out you didn’t know what was inside the pen cap?
[Officer Price:] No I wouldn’t have been able to tell you what was inside it no.
Id. at 18 (emphasis added).
The trial court denied Clanton’s motion to suppress. At the bench trial held on March 1, 2012, Clanton renewed his motion to suppress and objected to the admission of the cocaine into evidence. At trial, Officer Price testified, “[I] could immediately see a clear baggie that was stuffed into [the pen cap] and the excess was hanging out of the pen cap. But I didn’t know what was in the baggie.” Id. at 47-48 (emphasis added). He further stated, “I noticed the clear baggie that was stuffed into the pen cap with a lot of excess bag hanging out which I’ve seen in the past ... used to carry narcotics.” Id. at 51.
The trial court overruled Clanton’s objection to the admissibility of the evidence and found him guilty as charged of possession of cocaine as a class D felony. Clan-ton now appeals.

DISCUSSION AND DECISION

I. Standard of Review

A trial court has broad discretion in ruling on the admissibility of evidence. Shinault v. State, 668 N.E.2d 274, 276 (Ind.Ct.App.1996). We will reverse a trial court’s ruling on admissibility of evidence *1023 only when an abuse of discretion has occurred. Scott v. State, 855 N.E.2d 1068, 1071 (Ind.Ct.App.2006). An abuse of discretion occurs when the trial court’s decision is clearly against the logic and effect of the facts and circumstances before the court. Id.
II. Admissibility of Cocaine— Search and Seizure
As noted above, Clanton argues that the cocaine should not have been admitted into evidence at his trial because the officer’s seizure of it violated his constitutional right to be free from unreasonable searches and seizures. Indeed, both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution guarantee this right.[4] Notwithstanding the nearly identical text of these guarantees, the very same police behavior could be reasonable under the federal constitution and unreasonable under the state constitution, or vice versa, because each has a distinct reasonableness analysis. See Litchfield v. State, 824 N.E.2d 356, 361 (Ind.2005) (explaining that the federal guarantee focuses on one’s reasonable expectation of privacy and setting out a three-factor balancing test for assessing reasonableness under the Indiana Constitution).
Nevertheless, evidence obtained by police action in violation of either constitution is inadmissible. See Terry v. Ohio, 392 U.S. 1, 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (explaining that the federal exclusionary rule is a “principal mode of discouraging unlawful police conduct”); Grier v. State, 868 N.E.2d 443, 445 (Ind.2007) (holding that the Indiana Constitution requires suppression of evidence discovered during an unconstitutional search).[5] We review de novo the ultimate question of whether the right to be free from unreasonable searches and seizures was violated. Howard v. State, 862 N.E.2d 1208,1210 (Ind.Ct.App.2007).

A. The Federal Constitution Claims

Clanton contends that the initial stop was not justified because the officers could not reasonably suspect him of loitering or otherwise being engaged in criminal activity merely because he was standing outside a doorway for five to fifteen seconds with two other black males. Appellant’s Br. p. 7-8. He also contends that there was no basis for Officer Price to suspect that he was armed and dangerous to justify the patdown for weapons when he fully complied with Officer Price’s instructions and made no furtive or threatening actions and that, even if both the initial stop and pat-down were proper, the subsequent search exceeded the scope of a valid frisk under Terry. Id. at 11,13.
Generally, unless an exception applies, searches and seizures performed without a warrant are “per se unreasonable under the Fourth Amendment.” Shi-nault, 668 N.E.2d at 276 (citing Thompson *1024 v. Louisiana, 469 U.S. 17, 19-20, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984)) (emphasis in original). The United States Supreme Court recognized one such exception to the warrant requirement in Terry v. Ohio in holding that a police officer may briefly stop a person on less than probable cause if the officer reasonably suspects that “criminal activity may be afoot.” 392 U.S. at 30, 88 S.Ct. 1868. Moreover, Terry held that if the officer reasonably suspects that the stopped person may be armed and dangerous, the officer may “conduct a carefully limited search of the outer clothing” of the individual for the sole purpose of locating weapons that could be used against the officer. Id. However, this limited search is intended only to satisfy an officer’s peace of mind that an individual is not armed so that the officer can safely make inquiries of the individual at close range; it is not intended to give officers free reign to conduct an unbridled search for any contraband a person may be carrying. Minnesota v. Dickerson, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Whether a Terry stop or frisk is justified, as well as the accepted degree and scope of these limited exceptions to the warrant requirement, is based upon the totality of the circumstances. Illinois v. Wardlow, 528 U.S. 119, 136, 120 S.Ct. 673,145 L.Ed.2d 570 (2000).

1. Applicability of the Fourth Amendment to Off Duty Police Officers Acting as Security Guards

Before proceeding to the merits of Clan-ton’s claims, we will first address the State’s contention that the Fourth Amendment was not implicated by Officer Price’s actions. See Scott, 855 N.E.2d at 1073-74 (finding that an off-duty police officer working as a security guard on private property was entitled to stop a suspected loiterer and inquire about his interest in the property without implicating the Fourth Amendment). To be sure, there are some situations where the actions of police officers are not implicated by the Fourth Amendment. See Clarke v. State, 868 N.E.2d 1114, 1118 (Ind.2007) (quoting Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)) (explaining that “the Fourth Amendment is not triggered unless an encounter between a law enforcement officer and a citizen ‘loses its consensual nature’ ”).
Whether or not a police officer’s actions are subject to the Fourth Amendment while the officer is off duty depends on the “nature of the acts” that the officer is performing. See Tapp v. State, 406 N.E.2d 296, 302 (Ind.Ct.App. 1980) (finding that an out-of-uniform, off-duty police officer working as private security was performing his official law enforcement duties when he identified himself as a police officer, displayed his badge, and advised a woman she was under arrest pursuant to Indiana law). In this instance, the record demonstrates that Officer Price was acting as a law enforcement officer during this investigation. More specifically, Officer Price was wearing his full police uniform, complete with his badge, gun, taser, and radio. Tr. p. 12-13. Although Officer Price may not have verbally identified himself as a police officer, id. at 36, 43, it seems likely that someone being approached by two men wearing full police uniforms would assume that the men were acting in a state-sanctioned law enforcement capacity and not as security officers for the apartment complex. Moreover, after one of Clanton’s companions fled, Officer Price ordered the two remaining men to put their hands on the wall and performed a patdown search of the men while brandishing his taser for officer safety. Id. at 10. These actions are consistent with Officer Price’s law enforcement training, but they would not otherwise be avail *1025 able to a private security guard. See Lemon v. State, 868 N.E.2d 1190,1193-96 (Ind.Ct.App.2007). Thus, we conclude that although Officer Price was off duty and on private property, the Terry stop and frisk effectuated by Officer Price comes within the auspices of Fourth Amendment protections.

2. The Stop and Frisk

Clanton challenges the propriety of the officers’ initiation of the stop and the subsequent patdown, claiming that these actions were improper under the Fourth Amendment. However, we need not address these contentions because, for the reasons discussed below, we find that the search of the pen cap exceeded the parameters that Terry and its progeny permit.[6]
As noted above, the purpose of a protective search authorized by Terry “is not to discover evidence of a crime, but rather to allow the officer to pursue his investigation without fear of violence.” Dickerson, 508 U.S. at 373, 113 S.Ct. 2130. During this limited search, an officer is permitted to remove an item that feels like a weapon from an individual’s outer clothing to determine whether the item is in fact a weapon. Shinault, 668 N.E.2d at 277. In addition, the “plain-feel doctrine” approved by Dickerson permits an officer to remove non-weapon contraband during a Terry frisk if the contraband is detected during an initial patdown for weapons and if the incriminating nature of the contraband is immediately ascertained by the officer. Harris v. State, 878 N.E.2d 534, 538-39 (Ind.Ct.App.2007).
However, our Supreme Court has held that “the reasonable suspicion which gives authority to a Terry stop does not, without more, authorize the examination of contents of items carried by the suspicious person.” Berry v. State, 704 N.E.2d 462, 466 (Ind.1998). Thus, if an officer determines that an item is not a weapon and the officer cannot immediately ascertain whether or not the item is contraband, the search of that item must stop. See, e.g., Granados v. State, 749 N.E.2d 1210, 1215 (Ind.Ct.App.2001) (holding that an illegal search occurred when an officer discovered cocaine by unfolding a five-dollar bill that had fallen from an individual’s sock during a patdown for weapons because “[o]nce the five-dollar bill fell to the ground, [the officer] could have simply covered the bill with his shoe or kicked it out of reach and completed his patdown search ... without fear of being injured by any weapons it may have contained”).
Clanton contends that Officer Price went beyond the permissible scope of a Terry frisk when, after removing the pen cap from Clanton’s pocket, he determined that the item was not a weapon but continued to examine it, ultimately discovering that the pen cap held a baggie containing cocaine.[7] Appellant’s Br. p. 13. In support of this proposition, Clanton directs us to Harris and Jackson v. State, 669 N.E.2d 744 (Ind.Ct.App.1996). Appellant’s Br. p. 12-13. In each of these cases, an officer was justified in removing a pill bottle from *1026 an individual’s outer clothing on the basis that the hard object felt by the officer might be a weapon. Harris, 878 N.E.2d at 538; Jackson, 669 N.E.2d at 748. However, the officer in each case then overstepped the bounds of Terry by further manipulating the pill bottle, which in turn led to the discovery of cocaine. Harris, 878 N.E.2d at 537, 539; Jackson, 669 N.E.2d at 746, 749.
In our view, the dispositive fact is not whether a container is open or closed, but whether the illicit nature of an item was immediately apparent to the officer or apparent only through further manipulation. See Dickerson, 508 U.S. at 379,113 S.Ct. 2130 (analogizing the plain-feel doctrine to the plain-view doctrine as limited by Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), which held that the moving of stereo equipment to check serial numbers was an impermissible search under the Fourth Amendment absent probable cause to suspect the equipment was stolen when “the incriminating character of the stereo equipment was not immediately apparent”).
Here, once Officer Price discovered that the sharp item in Clanton’s pocket was a pen cap, he had dispelled his suspicion that the item was a weapon. Indeed, Officer Price testified that he kept the pen cap, searched it, and seized its contents because, “upon further investigation and looking at it,” he saw a baggie hanging from the pen cap, and based on previous experiences of finding narcotics in baggies in pen caps, he suspected that this baggie contained narcotics. Tr. p. 11, 18, 47-48, 51. Officer Price also admitted numerous times that he could not tell what was inside the baggie when he first observed it hanging out of the pen cap. Id. at 18, 48. In fact, Officer Price realized that the baggie contained cocaine only upon closer examination. Id. at 11. Thus, like in Harris and Jackson where the illicit nature of the pill bottles was not immediately apparent to the investigating officers, here the contraband nature of the contents of the pen cap was not immediately apparent to Officer Price. As a result, the discovery of the cocaine violated Clanton’s right to be free from unreasonable searches under the Fourth Amendment, and the trial court erred in admitting the cocaine into evidence. Thus, Clanton’s conviction cannot stand.
The judgment of the trial court is reversed.
ROBB, C.J., concurs.
BRADFORD, J., concurs in part and dissents in part with opinion.

. Ind.Code § 35-48-4-6.

. The officer who was working with Officer Price was referred to as Officer McFadden during the suppression hearing but as Officer Garrison at Clanton's trial.

. According to Officer Price, the apartment complex’s no-loitering policy is written into its bylaws which every resident is required to review. However, there is no evidence in the record that suggests that Clanton was a resident of the apartment complex or otherwise aware of the no-loitering policy. There was also no evidence presented indicating that there are any no-loitering signs posted at the apartment complex that would have alerted Clanton of this policy.

. The text of the Fourth Amendment, which the Indiana Constitution parallels nearly verbatim, is as follows:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

. Because we reverse Clanton’s conviction on the basis that he was subjected to an unreasonable search under the Fourth Amendment, we do not reach Clanton's claim that the search and seizure were unreasonable under Article 1, Section 11 of the Indiana Constitution. See Reinhart v. State, 930 N.E.2d 42, 48 n. 1 (Ind.Ct.App.2010).

. Although we do not reach the merits of these claims, we caution that "[t]he color of one's skin, the neighborhood one happens to be in, and the fact that one turns away from the police are not sufficient, individually or collectively, to establish a reasonable suspicion of criminal activity.” Tumblin v. State, 664 N.E.2d 783, 785 (Ind.Ct.App.1996).

. As an aside, we note that Clanton concedes, and we agree, that if the initiation of the patdown was proper, Officer Price would have been justified in removing a sharp item from his outer clothing to dispel his fear that the item could be used as a weapon. Appellant’s Br. p. 13.