Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2014, 10:07 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
McGrath, LLC
Carmel, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA S. RAMON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1404-CR-128 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITLEY SUPERIOR COURT
The Honorable Douglas M. Fahl, Judge
Cause No. 92D01-1202-CM-69

**December 23, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Joshua S. Ramon ("Ramon") appeals from his convictions for Possession of Paraphernalia, a Class A misdemeanor,[1] and Possession of Marijuana, as a Class D felony.[2] He presents the sole issue of whether a pat-down and seizure of contraband was conducted in contravention of the Fourth Amendment to the United States Constitution,[3] such that admission of the seized evidence constitutes reversible error. We affirm.

## Facts and Procedural History

On February 5, 2012, at around 3:10 a.m., Whitley County Sheriff's Deputy Cory Patrick ("Deputy Patrick") observed a vehicle with three occupants traveling on US Route 30 with only one working headlight and one working tail-light. Deputy Patrick also determined that the vehicle's license plates were expired; he initiated a traffic stop. Upon approaching the vehicle, Deputy Patrick "thought he could smell burnt marijuana." (Tr. 47.)

Deputy Patrick decided to have the vehicle towed, and first informed the driver. When interacting with the driver, Deputy Patrick observed that the driver had red, glassy eyes. Deputy Patrick approached the passenger side of the vehicle, where he detected the smell of marijuana. He advised the passengers that the vehicle was being towed and offered

---

[1] Ind. Code § 35-48-4-8.3.

[2] I.C. § 35-48-4-11. The offense was elevated due to a prior possession conviction.

[3] Although Ramon refers to the Indiana Constitution in his articulation of the issue presented in this appeal, he does not make a separate argument under the Indiana Constitution.

2

a ride to a warm, public place. At that time, the nearest gas station was one to two miles away and the nearest town was five to six miles away.

Deputy Patrick stated that the transport in the police vehicle could not take place without a pat-down for weapons. Ramon, the front-seat passenger, complied with directions from Reserve Officer Matt Jones ("Officer Jones") to position himself for a pat-down. When Officer Jones patted the exterior of Ramon's jacket, he felt a hard object in the jacket pocket. It was "about the same" as the "standard dimension" of a razor blade. (Tr. 81). The item was retrieved and examined. It was a plastic cube box holding green plant material, later determined to be marijuana. Deputy Patrick asked if Ramon had any other contraband on him, and Ramon replied that he had a small pipe in his left front coat pocket. This item was retrieved also, and Ramon was placed under arrest.

The State charged Ramon with possession of marijuana and paraphernalia, and further alleged that Ramon had a prior conviction for marijuana possession, supporting elevation of the possession of marijuana offense to a Class D felony. Prior to trial, Ramon moved to suppress the evidence gained as a result of the pat-down. The trial court denied the motion, concluding that the officers were "rendering aid" as opposed to conducting an ongoing investigation or detention. (App. 51.) At his bench trial, Ramon unsuccessfully objected to the admission of evidence obtained during the pat-down.

Ramon was found guilty as charged and was sentenced to one and one-half years imprisonment, with sixty days to be executed and the remainder suspended to probation. Ramon now appeals.

**Discussion and Decision**

Ramon contends that the marijuana and pipe recovered from his person should not have been admitted into evidence. According to Ramon, the officers conducted a Terry[4] frisk but exceeded the permissible scope by seizing contraband, and the State offered the evidence under the "plain feel" doctrine[5] without satisfaction of the predicate requirements. The State responds that Ramon consented to a pat-down and, in any event, the search was supported by reasonable suspicion of criminal activity.

The instant appeal presents a challenge to the admissibility of evidence. "Where a defendant does not perfect an interlocutory appeal from a trial court's ruling on a motion to suppress, but objects to the admission of the evidence at trial, the issue on appeal is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." Danner v. State, 931 N.E.2d 421, 426 (Ind. Ct. App. 2010), trans. denied. A trial court has discretion in the admission of evidence and the appellant bears the burden of establishing that the trial court abused its discretion. Patterson v. State, 958 N.E.2d 478, 484-85 (Ind. Ct. App. 2011).

---

[4] Terry v. Ohio, 392 U.S. 1 (1968). A "Terry" frisk is a pat-down search that involves a "carefully limited search of the outer clothing of the suspect in an attempt to discover weapons which might be used to assault [an officer]." Shinault v. State, 668 N.E.2d 274, 277 (Ind. Ct. App. 1996). A Terry search should be confined to its protective purpose. Id.

[5] See Minnesota v. Dickerson, 508 U.S. 366 (1993). An officer is permitted to remove an item that feels like a weapon from an individual's outer clothing to determine whether the item is in fact a weapon. Clanton v. State, 977 N.E.2d 1018, 1025 (Ind. Ct. App. 2012). In addition, the "plain-feel doctrine" approved by Minnesota v. Dickerson permits an officer to remove non-weapon contraband during a Terry frisk if the contraband is detected during an initial pat-down for weapons and if the incriminating nature of the contraband is immediately ascertained by the officer. Id.

The Fourth Amendment to the United States Constitution states, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. This federal right to be free of unreasonable searches and seizures applies to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 650 (1961). As a general rule, searches and seizures conducted without a warrant supported by probable cause are prohibited by the Fourth Amendment. Clark v. State, 994 N.E.2d 252, 260 (Ind. 2013). As a deterrent mechanism, evidence obtained in violation of the rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception. Id. It is the State's burden to prove that one of the well-delineated exceptions is satisfied. Id.

We review de novo a trial court's ruling on the constitutionality of a search or seizure. Patterson, 958 N.E.2d at 485 (citing Belvedere v. State, 889 N.E.2d 286, 287 (Ind. 2008)). Nonetheless, we defer to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. Id. We do not reweigh the evidence, but consider conflicting evidence most favorable to the trial court's ruling. Id. "The State bears the burden of demonstrating the constitutionality of the measures it uses in securing information." State v. Murray, 837 N.E.2d 223, 225 (Ind. Ct. App. 2005), trans. denied.

Encounters between law enforcement officers and public citizens take a variety of forms, some of which do not implicate the protections of the Fourth Amendment and some of which do. Clark, 994 N.E.2d at 261 (citing Finger v. State, 799 N.E.2d 528, 532 (Ind.

5

2003)).  Consensual encounters do not compel Fourth Amendment analysis; however, nonconsensual encounters do.  Id.  A detention is typically one of two levels:  a full arrest lasting longer than a short period of time, or a brief investigative stop.  Id.  The former requires probable cause to be permissible and the latter requires the lower standard of reasonable suspicion.  Id.

"A traffic stop is a seizure under the Fourth Amendment, [and] police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that criminal activity is taking place."  Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009) (citing Whren v. United States, 517 U.S. 806, 809-10 (1996)).  An objective basis must exist for suspecting legal wrongdoing.  See State v. Atkins, 834 N.E.2d 1028, 1032 (Ind. Ct. App. 2005), trans. denied.

A routine traffic stop is more analogous to a so-called "Terry stop" than to a formal arrest.  Wilson v. State, 745 N.E.2d 789, 791 (Ind. 2001) (citing Knowles v. Iowa, 525 U.S. 113 (1998)).  The principal issue is whether the police action in question was reasonable under all the circumstances, and involves a dual inquiry:  whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.  Id. at 792.  Ramon does not challenge the propriety of the initial traffic stop, but only the subsequent search.

The Fourth Amendment allows privacy interests protected by that amendment to be balanced against the interests of officer safety.  Id.  "[T]o subject the stopped motorist to a frisk for weapons is permissible only if 'a reasonably prudent man in the circumstances

6

would be warranted in the belief that his safety or that of others was in danger.'" Id. (quoting Terry v. Ohio, 392 U.S.1, 27 (1968)). "Police may not frisk for weapons 'on less than reasonable belief or suspicion directed at the person to be frisked.'" Id. (quoting Ybarra v. Illinois, 444 U.S. 85, 94 (1979). Accordingly, an officer's authority to conduct a pat-down search depends upon the nature and extent of his particularized concern for his safety and that of others. Id.

In Wilson, our Indiana Supreme Court addressed a pat-down search conducted prior to placing a driver inside a police vehicle during an ongoing routine traffic stop. The Court acknowledged that "when an officer places a person into a patrol car that will be occupied by the officer or other persons, there is a significantly heightened risk of substantial danger to those in the car in the event the detainee is armed." 745 N.E.2d at 792. The Court expressed its belief "that this increased risk is sufficient to satisfy the requirements of Ybarra, and that it is generally reasonable for a prudent officer to pat-down persons placed in his patrol car, even absent a belief of dangerousness particularized to the specific detainee." Id.

However, the Court also observed that law enforcement personnel must use the least intrusive means reasonably available to address suspicion and therefore declined to hold that "the Fourth Amendment permits the police routinely to place traffic stop detainees in a police vehicle if this necessarily subjects the detainee to a preliminary pat-down frisk." Id. at 793. The trooper had testified that he could have performed field sobriety tests outside his patrol vehicle, and had an option of allowing [defendant] Wilson to stay in his

7

car and take a portable breath test.  Id.  In light of the less intrusive options available to the officer, there was found to be "no reasonably necessary basis for placing Wilson in the squad car."  Id.  The pat-down search violated the Fourth Amendment.  Id.

Subsequently, in Lewis v. State, 755 N.E.2d 1116 (Ind. Ct. App. 2001), a panel of this Court considered whether the trial court erred in admitting evidence obtained from the pat-down search conducted prior to placing Lewis into a police vehicle.  Lewis was driving a vehicle with plates that had been expired for more than one year; during a traffic stop, a trooper decided that the vehicle should be impounded.  Id. at 1120.  Lewis requested transportation to a telephone and the trooper agreed to provide the transportation, contingent upon a pat-down search.  Id.  The search yielded drugs, Lewis was convicted of possession offenses, and on appeal he challenged the propriety of the pat-down prior to transport.

The Lewis Court found the pat-down search to be reasonably necessary for the protection of the police officer, reasoning:

> The totality of the circumstances in this case indicates that it was reasonably necessary for Trooper Jack to place Lewis inside the police vehicle.  Lewis's vehicle was incapable of lawful operation because of the expired license plate.  When Lewis expressed his desire to be transported, Trooper Jack advised that he would transport Lewis as requested, but only after he conducted a pat-down search for weapons and contraband.  Even if Trooper Jack lacked a belief that Lewis posed a risk of danger, the increased risk of placing Lewis, a potentially armed individual, into the police vehicle justified Trooper Jack's pat-down search of Lewis prior to placing him inside the police vehicle.  As it was reasonably necessary for Trooper Jack to conduct the pat-down search prior to transporting Lewis, the search did not violate the Federal Constitution.

8

Id. at 1124.

Similar circumstances are present here. Deputy Patrick had decided to impound Ramon's vehicle, transport the driver to the hospital for a blood draw upon suspicion of driving while intoxicated, and offer a ride to the passengers. At this juncture, the officers were in the position of offering aid to two individuals on a cold February morning, miles from the nearest public business or town. Deputy Patrick advised Ramon and the other passenger that they would be provided a "ride to town," to a hotel or public place, but that they "had to be patted down for weapons." (Tr. 50, 69.) Deputy Patrick testified that the pat-down at issue was done "strictly for officer safety." (Tr. 72.) Ramon was compliant with the process. He has never disputed that he agreed to the terms on which a ride was offered to him; that is, he would be patted down for weapons before entering the police vehicle with his companion. Ramon's complaint is, in essence, that the taking of items exceeded the scope of the pat-down agreed upon.

Even if we found that Ramon did not consent to the precise scope of the search at issue, the protection of the Fourth Amendment is not "a guarantee against all searches and seizures, but only against unreasonable searches and seizures." United States v. Sharpe, 470 U.S. 675, 682 (1985). According to his testimony, Officer Jones felt an object that was small and hard and his concern arose that it was a weapon. This concern was not obviated before the object was taken out of the pocket and examined. Thereafter, Ramon disclosed that his other pocket held contraband.

9

As in <u>Lewis</u>, it was reasonably necessary for Ramon to be placed in the police vehicle and reasonably necessary for the officer to conduct the pat-down search prior to transport.

## Conclusion

The search did not violate the Fourth Amendment to the United States Constitution.

Affirmed.

ROBB, J., and BROWN, J., concur.