## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 27 2019, 7:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeremy Jay Ellis,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 27, 2019

Court of Appeals Case No.
19A-CR-462

Appeal from the Lagrange
Superior Court

The Honorable Lisa M. Bowen-Slaven, Judge

Trial Court Cause No.
44D01-1711-F4-20

**Baker, Judge.**

[1] Jeremy Ellis appeals his convictions and sentence for Level 4 Felony Manufacturing Methamphetamine,[1] Level 6 Felony Possession of Methamphetamine,[2] and Level 6 Felony Possession of Precursors.[3] Ellis argues (1) that the trial court erroneously admitted evidence discovered pursuant to an allegedly illegal search, and (2) that the sentence is inappropriate in light of the nature of the offenses and his character. Finding no error and that the sentence was not inappropriate, we affirm.

# Facts

[2] At around 4:00 A.M. on November 15, 2017, LaGrange County Sheriff's Deputy Matthew Schwartz was dispatched to the LaGrange Public Library following a report of a suspicious male who appeared to be sleeping by the library's front entrance. Upon arrival at the library, Schwartz found Ellis, who was homeless at the time, sitting and leaning against a pillar by the front door, with a duffel bag and trash bag within arm's reach.

[3] Deputy Schwartz approached Ellis and began talking with him about why he was there. During this conversation, Ellis kept reaching into his pants pockets. Schwartz asked Ellis to remove his hands from his pockets and Ellis initially complied, but continued putting his hands back in his pockets. Schwartz then

---

[1] Ind. Code § 35-48-4-1.1.

[2] I.C. § 35-48-4-6.1(a).

[3] I.C. § 35-48-4-14.5(e).

asked Ellis if he had any weapons. Ellis responded that he had a knife, so Schwartz conducted a pat-down search for weapons, during which Schwartz felt a cylindrical object in Ellis's left pants pocket. Thinking that it "could have been a knife," tr. vol. II p. 204, Schwartz retrieved the object and saw that it was a plastic baggie containing a hollowed-out pen, resembling a straw, with a white powdery residue visible inside the pen shell. Deputy Schwartz testified that, based on his experience as a police officer, he "immediately" recognized the pen shell as an object used to consume methamphetamine. *Id*. at 8, 204.

[4] Deputy Schwartz then handcuffed Ellis and placed him under arrest. During a search incident to arrest, the deputy found a piece of tin foil inside Ellis's wallet, which Ellis admitted he used for consuming methamphetamine. Deputy Schwartz also found a small plastic baggie containing a white powdery substance that was later determined to be methamphetamine. Police later searched Ellis's duffel bag and trash bag, finding multiple items used in the "one pot" method of methamphetamine production. Tr. Vol. II p. 168.

[5] On November 15, 2017, the State charged Ellis with Level 4 felony manufacturing methamphetamine, Level 6 felony possession of methamphetamine, and Level 6 felony possession of precursors. On November 27, 2017, Ellis filed a motion to suppress, which the trial court denied at a hearing held on February 28, 2018.

[6] A jury trial was held January 16-17, 2019, at the conclusion of which the jury found Ellis guilty as charged. On February 11, 2019, the trial court imposed an

eight-year sentence for the Level 4 felony conviction and concurrent one and one-half year sentences for each of the two Level 6 felony convictions, for a total of eight years imprisonment. The trial court recommended Ellis for placement in the Purposeful Incarceration Program and stated that it would consider a sentence modification upon Ellis's successful completion of the Program. Ellis now appeals.

# Discussion and Decision

## I. Admission of Evidence

Ellis's first argument on appeal is that the trial court improperly admitted evidence obtained from an illegal search. Admission or exclusion of evidence is within the trial court's sound discretion and is given great deference on appeal. *E.g.*, *Ennik v. State*, 40 N.E.3d 868, 877 (Ind. Ct. App. 2015). We will reverse a trial court's ruling on admissibility only if the decision is clearly against the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. *Id.* However, to the extent that admissibility of evidence turns on the constitutionality of the search that discovered the evidence, our review is de novo. *Jacobs v. State*, 76 N.E.3d 846, 849 (Ind. 2017).

Ellis argues that the pat-down search that culminated in the discovery of the pen exceeded the permissible scope of a pat-down search under both the Fourth Amendment to the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. Ellis further contends that because the initial search was illegal,

all subsequently obtained evidence was the result of an unconstitutional act and was improperly admitted.

# A. Fourth Amendment

[9] The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be searched."

[10] One exception to the Fourth Amendment search warrant requirement provides that officers may conduct a "reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The officer need not be absolutely certain that the individual is armed; instead, the issue is whether a reasonably prudent person in the circumstances would be warranted in the belief that his or her safety or that of others was in danger. *Id.* In determining whether the officer acted reasonably, due weight must be given to "specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

[11] Here, Deputy Schwartz appropriately conducted the pat-down search of Ellis because Ellis's statement that he had a knife gave Schwartz reason to believe he

was dealing with an armed individual. *See Harris v. State*, 878 N.E.2d 534, 538 (Ind. Ct. App. 2007) (holding that officer's pat-down search and removal of object was permissible under *Terry* where defendant had told officer he had a pocket knife; officer "needed to ensure he removed all potentially dangerous items"). Ellis argues that Schwartz had no reason to believe Ellis was a threat or that he had a weapon on his person, as opposed to in his duffel bag, where the knife was eventually found. However, when Ellis stated that he had a knife, he did not specify where the knife was, but rather just stated that he had one. Nothing about Ellis's statement would sufficiently dispel any concern that a knife may have been located on Ellis's person, especially when considered in conjunction with Ellis's repeated insertion of his hands into his pockets. Schwartz's subsequent pat-down search was therefore valid.

[12] Ellis further argues that even if initiation of the pat-down search was justified, the scope of the search was unconstitutional because Deputy Schwartz "should have known the object in Mr. Ellis's pants pocket was just a writing utensil when he felt the pen through Mr. Ellis's clothing" and that the object "clearly was not a knife," and therefore should not have been retrieved. Appellant's Br. p. 17.

[13] We find this argument unconvincing. Because the purpose of a pat-down search for weapons is to protect officer safety, "police may remove an item whose identity is not immediately discernable by touch and that might be used as a weapon." *Harris*, 878 N.E.2d at 538 (holding removal of a pill bottle during pat-down search for weapons was proper); *see also, e.g.*, *Shinault v. State*, 668 N.E.2d

274 (Ind. Ct. App. 1996) (holding removal of object during a pat-down search was proper when officer felt cylindrical bulge in defendant's pocket; even though the object turned out to be a bag of marijuana, the officer "was unable to immediately eliminate the possibility that the tightly rolled plastic bag of marijuana was not some sort of dangerous weapon"). Here, Deputy Schwartz testified that he thought the object he felt in Ellis's pocket could potentially be a weapon. We agree with the State that a small knife could be the size of a pen, and that "it would not necessarily be immediately apparent that a hard, cylindrical object was a hollow part of a pen rather than a small knife." Appellee's Br. p. 19; *see also Clanton v. State*, 977 N.E.2d 1018, 1026 (Ind. Ct. App. 2012) (upholding removal of sharp item from defendant's pocket that turned out to be a pen cap).

[14] Once an item suspected to be a weapon is removed, "if an officer determines that an item is not a weapon and the officer cannot immediately ascertain whether or not the item is contraband, then the search of that item must stop." *Clanton*, 977 N.E.2d at 1025; *see also Granados v. State*, 749 N.E.2d 1210, 1215 (Ind. Ct. App. 2001) (holding that an illegal search occurred where officer found cocaine only after he unfolded a five-dollar bill that had fallen from defendant's sock during a pat-down search, because once on the ground, the bill posed no legitimate threat). But when an item is removed during a valid pat-down for weapons and its illicit nature is immediately apparent, then no Fourth Amendment violation has occurred and the item may be properly be used as evidence. *See, e.g.*, *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993) (stating

nature of object as contraband must be immediately apparent by either sight or touch to justify seizure without probable cause); *Bratcher v. State*, 661 N.E.2d 828, 833 (Ind. Ct. App. 1996) ("Because the officer discovered the bag of marijuana during a search for weapons and the incriminating character was immediately apparent . . . the search was authorized under *Terry* and, thus, seizure of the marijuana was valid under the United States Constitution."); *cf. Clanton*, 977 N.E.2d at 1025-26 (finding removal of pen cap from pocket was permissible but subsequent search inside the cap to find baggie of cocaine was not); *Harris*, 878 N.E.2d at 538-39 (holding that search of interior of pill bottle found during pat-down for weapons was beyond scope of *Terry* because illicit nature of its contents was discovered only after opening it and shining a light inside).

[15] Here, Deputy Schwartz testified that, upon removing the hollowed-out pen from Ellis's pocket, he "*immediately* recognized it to be an item . . . used to consume methamphetamine," tr. vol. II p. 8 (emphasis added), and was able to recognize it as such "because of [his] training and experience as a law enforcement officer," tr. vol. II p. 204. The presence of a "light residue," tr. vol. II p. 8, on the inside of the pen was also plainly visible to Deputy Schwartz without having to manipulate the object in any way or take any additional steps. As such, the nature of the item as paraphernalia was immediately apparent to Deputy Schwartz. Thus, the search was constitutional—and evidence was properly admitted—under the Fourth Amendment.

# B. Article 1, Section 11

Under Article 1, Section 11 of the Indiana Constitution, the legality of a search "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Whether a search or seizure is reasonable focuses on the actions of the officer, rather than on the defendant's reasonable expectation of privacy, and "turn[s] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.*[4]

First, with regards to the degree of suspicion, we look at "the reasonableness of the officers' assumptions, suspicions, or beliefs based on the information available to them at the time." *Duran v. State*, 930 N.E.2d 10, 18 (Ind. 2010). Both Ellis's statement that he had a knife and the repeated placement of his hands in his pockets despite commands to stop created a high degree of suspicion that Ellis may have been armed. *See Johnson v. State*, 38 N.E.3d 658, 664 (Ind. Ct. App. 2015) (finding degree of suspicion factor weighed heavily in

---

[4] The State argues that Ellis waived this argument because he neglected to raise it before the trial court. Ellis did not specifically mention the Indiana Constitution in his arguments before the trial court, but neither did he mention the Fourth Amendment—rather, he alleged generally that the search was "illegal." Appellant's App. Vol. II. p. 23-25; Tr. Vol. II. p. 10-24. Given our preference to resolve cases on their merits, we choose to address it.

favor of the State where defendant placed his hand in his pocket and ignored multiple commands to remove his hand).

[18] Next, we agree with both parties that the degree of intrusion was slight. We have previously held that an "ordinary" pat-down search of a suspect's clothing is a "fairly limited intrusion" under the Indiana Constitution. *Berry v. State*, 121 N.E.3d 633, 639 (Ind. Ct. App. 2019). No evidence suggests that the pat-down conducted by Deputy Schwartz was anything but an ordinary, routine pat-down for weapons.

[19] Lastly, with respect to the extent of law enforcement needs, we find that Deputy Schwartz's needs, given Ellis's statement that he had a knife, were sufficiently high to reasonably conduct the pat-down search. *See, e.g.*, *Bell v. State*, 81 N.E.3d 233, 238-39 (Ind. Ct. App. 2017) (holding that law enforcement needs were high enough to justify pat-down search where defendant had a bulge in his pocket and did not respond to officer's questions regarding what it was). Deputy Schwartz also acted reasonably in removing the cylindrical object from Ellis's pocket to confirm whether it was a knife.

[20] Because we find the pat-down search of Ellis and the resulting discovery of the hollowed-out pen to be lawful under both the federal and state constitutions, the trial court did not err by admitting the evidence found as a result of the pat-down search.

# II. Sentencing

Ellis's second argument on appeal is that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and his character.

Indiana Appellate Rule 7(B) provides that this Court may revise a statutorily authorized sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In conducting this review, "substantial deference" must be given to the trial court's decision, "since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

For Level 4 felony manufacturing methamphetamine, Ellis faced a term of two to twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5. For each of the Level 6 felonies, Ellis faced a term of six months to two and one-half years, with an advisory sentence of one year. I.C. § 35-50-2-7. The trial court imposed an eight-year sentence for the Level 4 felony and one and one-half year sentences for each of the Level 6 felonies, all to be served concurrently, for an aggregate eight-year term.

With respect to the nature of the offenses, Ellis engaged in the manufacture of methamphetamine, possessed some of the drug he manufactured, and possessed all necessary materials to allow him to continue manufacturing

methamphetamine. We do not find anything particularly egregious about these circumstances.

[25] With respect to Ellis's character, however, we note that Ellis has an extensive criminal history, including convictions for three felony offenses and three misdemeanor offenses, all of which are either drug- or alcohol-related offenses or property crimes. Ellis also has had multiple prior charges for possession of precursors or possession of methamphetamine. *See Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007) (holding that we may consider a defendant's history of arrests as a reflection of his character).

[26] Ellis argues that a revision to the advisory sentence would be sufficient to rehabilitate his substance abuse problems and that his status as an addict should not weigh against his good character. The trial court's sentencing decision already takes into account Ellis's substance abuse issues by recommending Ellis for the Purposeful Incarceration Program. If Ellis demonstrates that he is able to successfully address his substance abuse issues through that program in a shorter period of time, as he claims is probable, then he will be eligible at that time for a sentence modification.

[27] We do not find the sentence imposed by the trial court to be inappropriate in light of the nature of the offenses and Ellis's character.

[28] The judgment of the trial court is affirmed.

Kirsch, J., and Crone, J., concur.