

FILED

Aug 15 2019, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Clark County Public Defender's Office
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jarvis Peele,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 15, 2019

Court of Appeals Case No.
19A-CR-313

Appeal from the Clark Circuit
Court

The Honorable Bradley B. Jacobs,
Judge

Trial Court Cause No.
10C02-1703-F6-621

**Bailey, Judge.**

# Case Summary

[1] Jarvis Peele ("Peele") appeals his convictions for Possession of Methamphetamine, as a Level 6 felony,[1] Possession of Marijuana, as a Class B misdemeanor,[2] and Possession of a Controlled Substance, as a Class A misdemeanor.[3] He presents the sole issue of whether the trial court erred by admitting evidence from a search that exceeded the proper scope of a *Terry* search.[4] We reverse.

# Facts and Procedural History

[2] On March 30, 2017, Jeffersonville Police Officers Levi James ("Officer James") and Matthew Bauer ("Officer Bauer") stopped a vehicle for failure to signal a turn. Officer Bauer interacted with the driver and eventually placed him under arrest on an open warrant. Officer James interacted with Peele, the front seat passenger.

[3] According to Officer James, Peele's behavior led to the belief that Peele was "possibly armed." (Tr. Vol. I, pg. 72.) That is:

> [I] observed several indictors, criminal indicators, that aren't consistent with the innocent motoring public, specifically his

---

[1] Ind. Code § 35-48-4-6.1(a).

[2] I.C. § 35-48-4-11(a)(1).

[3] I.C. § 35-48-4-7(a). Peele was also adjudicated a habitual offender.

[4] *See Terry v. Ohio*, 392 U.S. 1 (1968).

carotid artery in his throat was throbbing, he avoid[ed] eye
contact with me as he spoke, he rubbed his palms on his
sweatpants multiple times, making furtive hand movements,
patting his jacket and pants pockets. And then he began to reach
in the area of the center front armrest retrieving metal tools, a
pair of pliers, a ratchet, from an area that I couldn't see and
placed them on his lap. He then raised his entire body and
turned and looked in that area, the area of the center armrest,
and underneath his person. And these behaviors aren't
consistent with the innocent motoring public through my training
and experience.

*Id.* at 57. Based upon these observations, Officer James asked Peele to exit the
vehicle and submit to a patdown search for officer safety. During the patdown,
Officer James felt "a large object in the front of [Peele]'s waistband that wasn't
consistent with the human anatomy" and Officer James "believed it to
immediately be or immediately be apparent that it was contraband." *Id.* at 58.
Officer James began to move Peele, in handcuffs, to the trunk of the vehicle.
Officer Bauer notified Officer James that a sock had rolled out of Peele's right
pant leg.

[4]     Officer James retrieved the potato-shaped sock and searched its contents. The
sock contained several baggies, the contents of which were later tested and
identified as methamphetamine and marijuana, and several pills, some of which
were later tested and identified as buprenorphine.

[5]     Peele was charged with possession of methamphetamine, marijuana, and a
controlled substance, and was granted leave to represent himself. Peele moved
to suppress the physical evidence gained in the traffic stop, and the trial court

conducted a suppression hearing on December 17, 2018. After hearing the officers' testimony, the trial court denied Peele's motion to suppress, reasoning that "the sock fell out, it was not removed by [the officers] so that search wasn't a search." *Id.* at 97. Peele asked that the order be certified for interlocutory appeal, and the trial court declined to do so, saying "I'm not going to give you the Interlocutory today. The case will be over by Wednesday." *Id.* at 100.

Peele was tried before a jury on December 18 and 19, 2018. He was convicted of each charged offense, and found to be a habitual offender. On January 10, 2019, Peele was sentenced to two years imprisonment for Possession of Methamphetamine, enhanced by four years due to his status as a habitual offender. He received concurrent sentences of 180 days for Possession of Marijuana and one year for Possession of a Controlled Substance. He now appeals.

# Discussion and Decision

## Standard of Review

The trial court has broad discretion to rule on the admissibility of evidence. *Thomas v. State*, 81 N.E.3d 621, 624 (Ind. 2017). Generally, evidentiary rulings are reviewed for an abuse of discretion and reversed when admission is clearly against the logic and effect of the facts and circumstances. *Id.* However, when a challenge to an evidentiary ruling is predicated on the constitutionality of a search or seizure of evidence, it raises a question of law that is reviewed de novo. *Id.* The State has the burden to demonstrate that the measures it used to

seize information or evidence were constitutional. *State v. Rager*, 883 N.E.2d 136, 139 (Ind. Ct. App. 2008). "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016).

# Waiver

At the outset, we address the State's contention that "Peele waived any issue as to the admissibility of the contents of the sock by failing to raise a timely objection to the admission of that evidence at trial." Appellee's Brief at 14. The State argues that, although Peele objected to the admission of the actual physical exhibits (methamphetamine, marijuana, and buprenorphine), these exhibits were "merely cumulative of the un-objected-to testimony from the two police officers." *Id.* at 16.

Officer James, but not Officer Bauer, testified prior to admission of the physical exhibits. Officer James testified:

> Officer Bauer observed a sock roll out from Mr. Peele's right pant leg that was subsequently collected and discovered to contain 11 individual baggies containing approximately 1 gram of a green-leafy substance, which I believed to be marijuana packaged for sale, a bag containing a clear crystal-like substance, which I believed to [be] methamphetamine, with a gross approximate weight, or a bag weight, of 1.8 grams, a bag containing three, and I apologize, ladies and gentlemen of the jury, I have a really hard time pronouncing this word[.]

(Tr. Vol. I, pg. 114.) Thus, without a contemporaneous objection from Peele, Officer Bauer conveyed to the jury his opinion or "belief" as to the contents of the sock. However, opinion testimony and physical exhibits are not alike. The admission of the physical exhibits – over Peele's objection – provided the foundation for subsequent expert testimony as to results of scientific testing of those items. The State elicited testimony from Indiana State Police analyst Rebecca Nichols to identify the character of each seized item. When he lodged his objection, Peele was not merely objecting to cumulative evidence.

[10] As the State has observed, a contemporaneous objection affords the trial court the opportunity to make a final ruling on the matter in the context in which the evidence is introduced. *Jackson v. State,* 735 N.E.2d 1146, 1152 (Ind. 2000). But Peele was discouraged from making repetitive objections, with the trial court referring to the suppression proceedings, "we litigated this [objection] already." *Id.* at 112. The trial court was well aware of the grounds underlying Peele's efforts to suppress evidence obtained in the warrantless search of his sock, that is, Peele alleged the seizure was in violation of his Fourth Amendment rights. We cannot say that Peele waived his right to raise an issue of admissibility of evidence on appeal.

# Fourth Amendment Claim[5]

[11] The Fourth Amendment "regulates all nonconsensual encounters between citizens and law enforcement officials." *Thomas*, 81 N.E.3d at 625. The Fourth Amendment guarantees that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[12] "It is unequivocal under our jurisprudence that even a minor traffic violation is sufficient to give an officer probable cause to stop the driver of a vehicle." *Austin v. State*, 997 N.E.2d 1027, 1034 (Ind. 2013). And an officer may perform a patdown of a driver or passenger of a stopped vehicle when the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether there is probable cause to arrest the individual for a crime. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). The purpose of a *Terry* protective search "is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Minnesota v. Dickerson*, 508 U.S. 366,

---

[5] Peele alleges that his rights under the Fourth Amendment to the United States Constitution were violated; he does not develop a separate argument with respect to the Indiana Constitution.

373 (1993).  Accordingly, the *Terry* search should be confined to its protective purpose.  *Shinault v. State*, 668 N.E.2d 274, 277 (Ind. Ct. App. 1996).

[13]  "In addition, the 'plain-feel doctrine' approved by *Dickerson* permits an officer to remove non-weapon contraband during a *Terry* frisk if the contraband is detected during an initial patdown for weapons and if the incriminating nature of the contraband is immediately ascertained by the officer."  *Clanton v. State*, 977 N.E.2d 1018, 1025 (Ind. Ct. App. 2012) (citing *Harris v. State*, 878 N.E.2d 534, 538-39 (Ind. Ct. App. 2007), *trans. denied*).  "Merely suspecting the nature of an object is insufficient."  *Parker v. State*, 697 N.E.2d 1265, 1268 (Ind. Ct. App. 1998).

[14]  Peele does not challenge the initial stop of the vehicle in which he was a passenger.  Nor does he challenge the propriety of the patdown for officer safety.  Rather, he argues "searching the sock exceeded the scope of the *Terry* search that [Officer] James was conducting."  Appellant's Brief at 10.  He contends that the search of his sock cannot be justified under the plain feel doctrine because the incriminating nature of the sock contents was not immediately apparent to Officer James.

[15]  Officer James testified that he patted the waistband of Peele's pants and detected "a large object that wasn't consistent with human anatomy."  (Tr. Vol. I, pg. 112.)  He further testified that the waistband area was "commonly used" to "carry weapons and contraband."  *Id.* at 113.  On cross-examination, he

defined "contraband" as "anything illegal or a weapon" and explained what he meant by contraband in the context of Peele's patdown:

> At that point, I knew it was contraband and what I mean by contraband is *possibly a weapon*. I had not completely dispelled that it was not a weapon or that there was not a weapon in the passenger area[.]

*Id.* at 141-42 (emphasis added). Officer James did not claim that he could detect, from the limited touch, "the incriminating nature" of the object. *Clanton*, 977 N.E.2d at 1025. He suspected the object was something illegal; he just did not know what it was in particular and thought it to be "possibly a weapon." *Id.* at 142. The testimony of possibility is insufficient. *See D.D. v. State*, 668 N.E.2d 1250, 1253-54 (Ind. Ct. App. 1996) (the plain feel doctrine was not satisfied by an officer's general declaration that a bulge "felt like contraband" or his initial feel that made him believe the item was "probably cocaine or marijuana"). As such, the State did not justify the search of the sock on the basis of the plain feel doctrine.

[16] That said, Officer James's testimony indicates that his safety concerns had not been dispelled when he moved Peele from the side of the vehicle to the back. When the sock rolled from Peele's pants, Officer James had not determined that Peele possessed no object capable of being used as a weapon. But if it was useful as a weapon, Peele was in handcuffs, and the sock was no longer in Peele's possession or under his control. Thus, the inquiry becomes whether

*Terry* justified the warrantless search of the sock – no longer on Peele's person – for officer safety.

[17] As a predicate matter, we consider the State's contention that Peele abandoned the sock and thus had no expectation of privacy in its contents. The State directs our attention to *Gipson v. State*, 459 N.E.2d 366 (Ind. 1984). There, an officer observed what he believed to be a drug transaction; the officer ordered both parties to "hold it" and ordered Gipson to drop a sack he was holding. *See id.* at 367. Instead, Gipson moved toward a nearby car and threw the sack, producing a metallic sound. The officer observed that Gipson was clutching something in his right hand; he then saw Gipson move and the movement was accompanied by the sound of something plastic hitting the ground. *Id.* Gipson was convicted of Possession of a Controlled Substance and Carrying a Handgun without a License. On appeal, he argued that the gun and vial containing cocaine and talwin should have been suppressed. The Court considered the tossed items to be abandoned, stating: "When the Defendant threw the vial and sack to the ground, the items were subject to lawful seizure by the police." *Id.*

[18] Here, Peele was handcuffed and did not toss the sock. Despite the State's arguments that the timing of the sock fall is suspicious and Peele must have manipulated his body so as to cause the sock to fall, there is no testimony or other evidence of Peele's volition. The evidence does not support the State's theory of abandonment. We turn to our consideration of whether the search of

the sock impermissibly broadened the scope of the *Terry* search beyond its protective purpose.

[19] In *Berry v. State*, 704 N.E.2d 462, 466 (Ind. 1998), our Indiana Supreme Court held:

> We believe that the reasonable suspicion which gives authority to a *Terry* stop does not, without more, authorize the examination of the contents of items carried by the suspicious person. But where either the suspicion that criminal activity may be afoot or a concern over the possibility of harm is reasonably heightened during the stop, the police are authorized to search such items *within the suspicious person's immediate control.*

(Emphasis added.)

[20] Once the sock fell, it was not within Peele's immediate control. A panel of this court had occasion to address a similar situation in *Granados v. State*, 749 N.E.2d 1210 (Ind. Ct. App. 2001), *trans. denied.* There, a police officer conducted a warrantless search of a folded bill that fell from a sock during a patdown for officer safety. We recognized that the officer could have obviated his safety concerns by placing the item out of the defendant's reach:

> Once the five-dollar bill fell to the ground, [Officer] Cassel could have simply covered the bill with his shoe or kicked it out of reach and completed his patdown search of Granados without fear of being injured by any weapons it might have contained. *See Berry*, 704 N.E.2d at 465 ("As commentators have noted, police officers can often protect themselves from any risk that the item might contain a weapon by simply putting it out of the person's reach."). By unfolding the bill to look for "weapons or

anything," [Officer] Cassel broadened the scope of the *Terry* search beyond its protective purpose. *See Johnson*, 710 N.E.2d at 928; *see also Terry*, 392 U.S. at 25-26, 88 S.Ct. 1868 ("A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation."); *Ybarra v. Illinois*, 444 U.S. 85, 93-94, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ("Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons.").

*Id.* at 1215. *See also Harris*, 878 N.E.2d at 539 (*Terry* does not provide justification for looking inside a closed pill bottle), *trans. denied*; *Fentress v. State*, 863 N.E.2d 420, 423 (Ind. Ct. App. 2007) (*Terry* does not authorize unwrapping a foil ball removed from a pocket); *Barfield v. State*, 776 N.E.2d 404, 407 (Ind. Ct. App. 2002) (removal of cigarette box from a pocket exceeded *Terry* frisk absent officer testimony of belief the box contained a weapon).

[21]     The State argues that, even though the sock was no longer in Peele's possession or control, Officer James could still reasonably have feared that the sock contained "an explosive or incendiary device."  Appellee's Brief at 30. However, there is no testimony suggesting that Officer James suspected or believed that Peele had secreted an explosive device in the sock placed in the waistband of his sweat pants.  And, in any event, a mere suspicion or possibility would not justify a warrantless search.

[22]     During a patdown for officer safety, Officer James detected a non-anatomical object in Peele's waistband and came to suspect that he was carrying

"contraband" of some type, "possibly a weapon." (Tr. Vol. I, pg. 142.) When a sock fell from Peele's person, Officer James was unaware of the nature of its contents. But rather than pushing the sock aside and obtaining a warrant, Officer James conducted a general search, "possibly" for a weapon or perhaps for other contraband. In doing so, he broadened the scope of the *Terry* search beyond its protective purpose.

# Conclusion

[23] The warrantless search of Peele's sock was conducted in violation of his Fourth Amendment rights. Evidence obtained in the search should not have been admitted at trial.

[24] Reversed.

Najam, J., and May, J., concur.