## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney L. Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Adam Garrison Campbell, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | June 30, 2020 <br><br> Court of Appeals Case No. 19A-CR-2704 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable John M. Marnocha, Judge <br><br> The Honorable Elizabeth A. Hardtke, Magistrate <br><br> Trial Court Cause No. 71D02-1809-F3-65 |

**Kirsch, Judge.**

[1] A jury found Adam Garrison Campbell ("Campbell") guilty of battery causing serious bodily injury,[1] a Level 5 felony, and Campbell pleaded guilty to battery causing moderate bodily injury,[2] a Level 6 felony. On appeal, Campbell raises one issue which we restate as whether the trial court abused its discretion by ruling at trial that only part of Campbell's statement was inadmissible on the grounds that he made a statement without having first been advised of his *Miranda* rights.

[2] We affirm.

## Facts and Procedural History

[3] On September 1, 2018, Notre Dame University and the University of Michigan were playing a football game in South Bend. *Tr. Vol. 2* at 11-12. Dustin Zimmerman ("Zimmerman") arrived at an area near the stadium at 6:30 a.m. to tailgate and watch television with family and friends. *Tr. Vol. 4* at 83. Later that afternoon, Zimmerman saw a little girl wandering by herself. *Id*. at 65, 84. Zimmerman's mother stopped the girl and told her to go back to her parents. *Id*. at 65, 84. Soon after, a young boy escorted the girl back to her parents. *Id*. at 84. Zimmerman noticed that the girl's mother was watching them from across the parking lot. *Id*. at 85. She approached Zimmerman and shouted, "don't worry about it. I'm watching my fucking kids." *Id*. at 85-86. She

---

[1] *See* Ind. Code § 35-42-2-1(g).

[2] *See* Ind. Code § 35-42-2-1(e).

continued to yell profanities at Zimmerman. *Tr. Vol. 3* at 103; *Tr. Vol. 4* at 86. Zimmerman told the woman that she needed to "watch [her] kid" and turned to walk away. *Id.* At that point, Brandon Gonzalez ("Gonzalez") struck Zimmerman in the face, and Gonzalez and Zimmerman began to fight. *Tr. Vol. 3* at 104; *Tr. Vol. 4* at 86-87, 121, 191-92. Campbell, who is Gonzalez's cousin, joined the fray. *Tr. Vol. 4* at 23, 52, 58-59.

[4] As the fight progressed, Scott Knapper ("Knapper"), Zimmerman's friend, noticed that Zimmerman had fallen to the ground and was bleeding from his back. *Id.* at 103. Knapper reached down, grabbed Zimmerman's hand, and helped him up. *Id.* at 103. At that point, Knapper noticed that he had been stabbed. *Id.* Knapper saw Campbell holding a knife and smirking. *Id.* at 104. Soon after, Zimmerman noticed that he too had been stabbed. *Id.* at 88.

[5] When police arrived, Campbell fled, but officers soon detained him. *Tr. Vol. 3* at 96-97; *Tr. Vol. 4* at 26. Campbell was taken to the South Bend Police Department and interviewed by Detective James Taylor ("Detective Taylor"). *Tr. Vol. 4* at 119-20. Campbell was not advised of his *Miranda* rights. *State's Ex. 22; Appellant's App. Vol. Two* at 49.

[6] The State charged Campbell with Count I, Level 5 felony battery by means of a deadly weapon for stabbing Zimmerman with a knife, and Count II, Level 3 felony aggravated battery, for knowingly inflicting injury on Knapper that created a substantial risk of death. *Appellant's App. Vol. Two* at 13. On February 18, 2019, Campbell filed a motion to suppress his statement made to Detective

Taylor, alleging that he was in custody when he spoke to Detective Taylor and that he had not been advised of his *Miranda* rights. *Id*. at 38-39. On March 29, 2019, a hearing was held on Campbell's motion. *Tr. Vol. 2* at 7. During the hearing, a copy of Campbell's recorded statement was not admitted into evidence. *Id*. at 7-17. Instead, the State presented testimony from Detective Taylor, who stated that Campbell was simply brought to the station as a person involved in the case and was not being treated as a suspect at that time. *Id*. at 12. Detective Taylor testified that Campbell was not handcuffed, was seated in a normal interview room used for witnesses, offered a cup of water, and was informed that he was not being arrested. *Id*. at 12-15. The trial court took Campbell's motion to suppress under advisement, and on April 23, 2019, it denied the motion. *Id*. at 17; *Appellant's App. Vol. Two* at 48-49.

[7] The jury trial commenced on May 15, 2019. *Tr. Vol. 3* at 2. During the State's case-in-chief, Campbell objected to the admission of his recorded statement, arguing that he was in custody when Detective Taylor questioned him, so Detective Taylor's failure to read Campbell his *Miranda* rights made Campbell's statement inadmissible. *Tr. Vol. 4* at 123. The trial court overruled Campbell's objection, finding that a reasonable person would not have felt compelled to make a statement or believe that they were not free to leave. *Id*. at 133-36.

[8] The video of his interview was played for the jury, and Campbell again renewed his objection to the admission of his statement, noting that during the first few minutes of the interview, an officer had entered the room and returned Campbell's personal property that had been collected from Campbell when he

had first arrived at the station. *Id*. at 139. Campbell argued that because his property had been taken from him when he had first arrived, he was in custody when Detective Taylor interviewed him, and, therefore, Detective Taylor should have advised Campbell of his *Miranda* rights. *Id*. at 140-41. At this point, the jury had viewed the first three minutes and forty-seven seconds of the recorded statement. *Id*. at 147-48; *State's Ex.* 22. The trial court granted Campbell's request to not admit the remaining part of the recorded statement. *Tr. Vol. 4* at 144. However, the trial court rejected Campbell's argument that the first part of his statement was also inadmissible. *Id*. at 144-45. Campbell moved for a mistrial, contending that because the jury had viewed part of the statement, there would be "unanswered questions" in the minds of the jurors. *Id*. The trial court denied the motion for mistrial because it determined that the portion of Campbell's statement that the jury heard contained no inculpatory statements. *Id*. The parties and the trial court agreed that it would be proper to admonish the jurors, and after taking suggestions from the parties, the trial court eventually admonished the jury as follows:

> You saw a video of [Campbell] and Detective Taylor. You may only consider the information you saw in the video from the point it began to the point it ended. You may not speculate on any other portions or sections of the video after it ended or speculate or consider that while you are in your final deliberations.

*Id*. at 150.

[9] At the conclusion of the jury trial, Campbell was found guilty of Level 5 felony battery resulting in serious bodily injury for attacking Knapper, a lesser-included offense of the original charge under Count II. *Id.* at 228; *Appellant's App. Vol. Two* at 96. The jury was unable to return a verdict on the other count, Count I Level 5 felony battery by means of a deadly weapon for allegedly stabbing Zimmerman with a knife. *Tr. Vol. 4* at 228; *Appellant's App. Vol. Two* at 96. In lieu of a retrial on Count I, Campbell pleaded guilty to Level 6 felony battery resulting in moderate bodily injury. *Appellant's App. Vol. Two* at 135-39. The trial court sentenced Campbell to an aggregate term of six years, with four years executed. *Id.* at 183. Campbell now appeals. We will provide additional facts as necessary.

## Discussion and Decision

[10] Campbell claims the trial court abused its discretion when it allowed the first part of his statement to be admitted, even though he admits nothing he said during that part of his statement was inculpatory. A trial court has broad discretion to rule on the admissibility of evidence. *Peele v. State*, 130 N.E.3d 1195, 1198 (Ind. Ct. App. 2019). An abuse of discretion occurs when the admission of the evidence is clearly against the logic and effect of the facts and circumstances. *Id.* at 1198-99. When an accused is subjected to custodial interrogation, the State may not use statements from the interrogation unless it demonstrates the use of procedural safeguards to secure the accused's privilege against self-incrimination. *Davies v. State,* 730 N.E.2d 726, 733 (Ind. Ct. App. 2000) (citing *Miranda v. Arizona,* 384 U.S. 436, 444 (1966)), *trans. denied.* When

a person is in custody, *Miranda* requires that he be informed of the right to the presence and advice of counsel during custodial interrogation by the police, of the right to remain silent, and that any statement he makes may be used as evidence against him. *Bryant v. State*, 959 N.E.2d 315, 321 (Ind. Ct. App. 2011).

[11] We agree with Campbell that the part of the statement reviewed by the jury contained no inculpatory statements. The published portion of the recorded statement shows Detective Taylor advising Campbell that he was at the station "for the drama that happened out there while you [were] partying." *State's. Ex.* 22 at 00:14. Detective Taylor then collected personal information about Campbell, such as Campbell's date of birth, age, address, place of employment and phone number. *Id.* at 00:51 to 02:07. Detective Taylor told Campbell that he simply wanted to know what Campbell "might have seen or heard out there." *Id.* at 02:21. Detective Taylor also said that he wanted Campbell's help to gather information and learn what actually happened. *Id.* at 02:35. Campbell told Detective Taylor that he had documented the fight with his phone. *Id.* at 02:49. When Detective Taylor asked Campbell if he had his phone with him, Campbell said that his phone was "with his personal property." *Id.* at 02:54. Detective Taylor left the room and briefly spoke with another officer about getting the phone. *Id.* at 03:05. Detective Taylor returned to the room and asked Campbell, "What happened?" *Id.* at 03:25. Campbell responded, "I had just invited a friend out. We walked over to the front of the Ivory Court Inn." *Id.* at 03:30. Campbell stopped talking as an officer brought

Campbell's personal property into the room, including Campbell's phone. *Id.* at 03:36. Campbell then continued, "She got dropped off in an Uber. She called me, and then me and my friend . . . ." *Id.* at 03:43. The jury did not review the remainder of the statement. *Tr. Vol. 4* at 144, 147-48. Campbell admits that he made no inculpatory statements during this exchange with Detective Taylor, and we find that the trial court did not abuse its discretion in refusing to rule that the first part of Campbell's statement was inadmissible.[3]

[12] Nonetheless, Campbell argues that he was prejudiced by the jury hearing the first part of the statement because it invited the jury to hypothesize about the content of the second portion of the statement, and Campbell asserts that the trial court's admonishment that jurors should not speculate about the content of the second part of the statement did not prevent the jury from doing so. Proof of such speculation, according to Campbell, can be found in the jury's verdicts. He reasons that because the jury deadlocked on Count I and found him guilty of only a lesser-included offense of Count II, the jury must have speculated about the content of the second part of the statement and that this tainted the jury's deliberations. Campbell asserts: "As the old adage goes, 'Where there's smoke, there is fire.' Although the jury was instructed not to speculate on what else might have been said on the taped statement, it is hard to believe, given the

[3] Because we find that the trial court did not abuse its discretion in declining to rule that the first part of Campbell's statement was inadmissible, we need not address Campbell's argument that the trial court's ruling was not harmless error.

verdicts, that it was not a factor in their deliberations." *Appellant's Br.* at 14 (citation omitted).

[13] Appellate review of Campbell's claim that the admonishment was inadequate is foreclosed by the doctrine of invited error. A party's failure to object accompanied by the party's affirmative request of a trial court raises the question of invited error. *Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014). This doctrine forbids a party from taking "advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). The doctrine may apply to a variety of errors the party requested of the trial court, such as the adoption of an erroneous jury instruction or the admission of evidence prejudicial to the defendant. *See, e.g.*, *Brantley v. State*, 91 N.E.3d 566, 573 (Ind. 2018); *Kingery v. State*, 659 N.E.2d 490, 494 (Ind. 1995). Here, Campbell requested the admonishment. The trial court proposed the following language for the admonishment:

> Ladies and gentlemen of the jury, you saw a video of [Campbell] and Detective Taylor. . . . [Y]ou may only consider the information you saw in the video from the point it began to the point it ended. You may not speculate on any other portions or sections of the video after it ended.

*Tr. Vol. 4* at 146. Campbell then asked the trial court to include the phrase "or consider it in your deliberations." *Id*. The trial court granted Campbell's request. *Id*. The final form of the instruction, as read to the jury, stated the following:

> You saw a video of [Campbell] and Detective Taylor. You may only consider the information you saw in the video from the point it began to the point it ended. You may not speculate on any other portions or sections of the video after it ended or speculate or consider that while you are in your final deliberations.

*Id.* at 150. Campbell did not object to this language; in fact, he had requested the admonishment and contributed some of the wording to the admonishment. *Id.*at 146-50. Thus, any alleged error in the admonishment is an error that Campbell invited by: 1) affirmatively requesting the admonishment; 2) proposing language for the admonishment; and 3) later failing to object to the language of admonishment when the trial court read the admonishment to the jury. *See Brewington*, 7 N.E.3d at 974. Thus, appellate review of this issue is foreclosed.

[14] Nonetheless, we will briefly address Campbell's argument on the merits. We presume that a timely and accurate admonition cures any error in the admission of evidence. *See Suding v. State*, 945 N.E.2d 731, 737 (Ind. Ct. App. 2011). Campbell's attempt to rebut this presumption falls woefully short. Again, he argues that because the jury deadlocked on Count I and found him guilty of only a lesser-included offense of Count II, the jury must have hypothesized about the content of the second part of the statement and that this speculation tainted the jury's deliberations. This is conjecture. There are a variety of explanations for the jury's verdicts, and the most plausible explanation is the simplest one: the jury did not convict Campbell as charged because it

concluded the State failed to prove beyond a reasonable doubt that Campbell was guilty as charged. Campbell's hypothesis about the jury's speculation about the content of the second part of his statement does not rebut our presumption that the trial court's admonishment cured any potential error. *See id*.

[15] Affirmed.

Najam, J., and Brown, J., concur.